(Decided 8th June, 1892.)

THE JOHNS HOPKINS UNIVERSITY *vs.* JOHN I. MIDDLETON, JAMES H. BUCHANAN, and ANTHONY C. CAZENOVE, Executors and Trustees.

*Construction of Will—Continuance of Trust—Power of Sale —Specific performance of Contract of Sale—Parties.*

A testator made his will in 1870 and died in July 1887. He left surviving him two married daughters with children, and three granddaughters, the children of a deceased daughter, and which granddaughters were also married and had children. The estate

of the testator was large, consisting of real and personal property of various descriptions, and this entire estate he devised and bequeathed to trustees, who were also named as executors, to hold to the uses and upon trusts expressed in the will. He directed his debts and funeral expenses to be paid, and certain amounts to be paid out as legacies, and $10,000 to be invested to raise certain annuities, the principal of which sum to revert to his estate. He then directed the trustees to hold in trust the entire residue of his estate and property, together with the reversion of the estate set apart to raise annuities, and that they should first divide the whole of such estate devised in trust into three equal parts, having reference to the value of each part. Provision was then made for the allotment of the parts, one to each of the two surviving daughters, Mrs. M. and Mrs. B., and one part to the three granddaughters, representing their deceased mother Mrs. S.; and this latter one-third part to be sub-divided into three equal parts, and one of the parts of such subdivision to be allotted to each of the three grandchildren in severalty. These several parts allotted to the two daughters and the three granddaughters the testator declared should be held "to the separate use and benefit of his said two daughters and three granddaughters, respectively, according to the parts chosen by them, as the same shall be allotted in the before-mentioned division, free from any control of any present or future husband, for the term of their natural lives, the annual product or avails thereof to go to and inure to his aforesaid daughters and granddaughters S. respectively, and after each of their deaths respectively, the share of each to be held by his trustees, as aforesaid, to the use of the children of his aforesaid daughters and granddaughters, and their heirs, executors, and administrators." By the last clause of the will it was provided that the trust as to the shares of said granddaughters "shall cease and determine in the case of each grandchild, upon and as she reaches the age of thirty, so far as regards her share coming either directly from me or from her mother's proportion of my estate, and that such grandchildren or grandchild, from that period and age, (thirty,) shall hold their respective shares, or her share, free and discharged of the said trust, to themselves for the term of their natural lives, respectively, and after their deaths to the lawful issue of their bodies, their heirs and assigns, forever; and the said trustees shall convey the shares of such grandchildren to them in accordance with this direction of my will." Subsequent to the arrival of two of said three granddaughters at the age of

thirty years, a part of the real estate of the testator was sold by said trustees at auction for the purpose of enabling them to make division among the devisees and legatees according to the direction of the will. The sale was evidenced in writing. The purchaser declined to comply with his contract, on the ground that the power of sale for the purpose of making a division, conferred upon the trustees by the will, had become inoperative by the arrival of said two granddaughters at the age at which by the terms of the will their shares were to be discharged from the trust. On a bill filed by the trustees against the purchaser to procure a decree for the specific performance of said contract, it was HELD:

1st. That by the last clause of the will the duration of the trust as to the shares of the said granddaughters was expressly limited to the period when such granddaughters would attain the age of thirty years.

2nd. That before, however, there could be an extinguishment of the trust *pro tanto*, and a transfer of the respective shares to the granddaughters, or to either of them, as directed by the will, it was a necessary pre-requisite that all legacies and charges upon the estate should be paid and satisfied, and that there should be a division and allotment of the estate, real and personal, among and to the legatees and devisees; and to this end ample power to sell was conferred upon the trustees.

3rd. That this power of sale was not a mere naked power in the trustees, but was coupled with the legal estate vested in them, and its exercise operated with reference to the shares or interest of each and all of the devisees and legatees entitled to take shares of the general residue of the estate, without regard to the fact that one of the granddaughters of the testator had attained the age of thirty years before his death.

4th. That such devisees and legatees could only take their respective shares upon division and allotment of the estate as directed by the will, and the division must precede the allotment.

5th. That the entire legal estate was in the trustees, and must remain there to serve the purposes of the trust, until the primary duties prescribed by the will, and the execution of the testamentary scheme of the testator, were performed by the trustees.

6th. That until division and allotment be made as the will directs, the main and principal duties imposed upon the trustees remained to be performed, and it was only through the perform-

Johns Hopkins University *vs.* Middleton, *et al.*

ance of these duties that the devisees were entitled to the posses_ sion and control of their separate and ascertained shares.

7th. That if necessary or advisable in the judgment of the trustees, for the purpose of an equitable and satisfactory division of the estate, that the power of sale should be exercised in respect to the property in question, the exercise of the power was fully authorized, as well by the terms as by the general plan of disposition of the testator's estate.

8th. That although as a general principle, a power given to trustees to be exercised during the continuance of the trust, cannot be exercised after the time when the trust has, in fact, by specific limitation, been terminated, even though, from the delay of the trustees, it has happened that the trust has not been completely executed, yet if the trust continues as to part of the property, as it unquestionably does in this case, though it may, by the terms of the instrument creating it, have ceased as to part, the power will remain in force, and can be exercised over the whole, for the benefit of all concerned, unless there is a clear imperative direction to the contrary.

9th. That the power of sale still continued to exist over the entire property sold by the trustees in this case, and the trustees had the right to exercise it.

10th. That as the trustees and the purchaser were the only parties to the contract of sale, they were the only necessary parties to the bill for the specific performance of the contract, and there was no necessity for making the two granddaughters and their husbands and children parties.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken by the defendant from the decree of the lower Court (DENNIS, J.,) adjudging that the contract of sale made between the plaintiffs and the defendant be specifically performed, and that upon the payment of the balance of the purchase money, the defendant shall be entitled to receive from the plaintiffs a good and sufficient deed of conveyance in fee simple of the property sold. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and BRISCOE, J.

*Charles J. M. Gwinn,* for the appellant.

It was expressly provided in the will of Lambert Gittings that the trusts created by it should cease and determine in the case of each granddaughter, when such granddaughter reached the age of thirty years; and that each of such granddaughters should hold her share from that period and age, free and discharged from the said trust, for the term of her natural life, and after her death to the lawful issue of her body, their heirs and assigns forever; and that the said trustees should convey the share of each granddaughter in accordance with the direction in said will. The time for the cessation of the trusts for the shares of the respective granddaughters was thus fixed at a definite period. *Dulany vs. Middleton,* 72 *Md.*, 80.

The trustees, under the will, were given power, as such trustees, to sell any part of his estate for the purpose of its equitable and satisfactory division between his daughters Harriet and Henrietta and the Simons granddaughters. This was not a mere power of sale, but an absolute trust for a sale. *Minors vs. Battison, L. R.,* 1 *Appeal Cases,* 428.

Eleanor A. Dulany was thirty years of age when her grandfather died. The trust, so far as she was concerned, never took effect. The period for its determination, defined in the will of Lambert Gittings, arrived before his death. Immediately upon his death the share of Eleanor A. Dulany in the rest and residue of her grandfather's estate vested in her for her natural life, with remainder after her death to her children.

Lambert Gittings gave by his will, to the trustees named therein, an *entire* estate in the rest and residue of his property. The power given to such trustees to divide that entire rest and residue into three portions of equal value, and to sell any part of it for the purpose of making such division, was a power coupled with an in-

terest, and was a power appurtenant to the estate of the trustees. It was not a power in gross. 1 *Sugden on Powers*, 2d Am. Ed., m. p. 40; *Reid vs. Gordon, et al.*, 35 *Md.*, 184; *Penn vs. Peacock, Cases Temp. Talbot*, 41.

The power to divide the whole rest and residue of the estate, in its entirety, was not a power which could be exercised by the trustees, unless they retained their estate in such entirety at the time of any proposed division. *Cumberlege vs. Cumberlege-Ware, L. R.*, 45 *Chan. Div.*, 275, 277.

The trustees under the will of Lambert Gittings never acquired an *entire* interest in the rest and residue of his estate. The trust as to one-ninth part of that rest and residue never took effect, because Eleanor A. Dulany, his granddaughter, who was entitled to one-ninth part of that residue, with remainder to her children, was thirty years of age when Lambert Gittings died. Her interest, and the interest of her children in one-ninth part of that rest and residue, vested upon the death of Lambert Gittings. The trustees under the will acquired an interest, or estate, in only eight-ninths of such rest and residue. *Doncaster vs. Doncaster*, 3 *Kay and John.*, 26.

If the power given by the will was appendant or appurtenant only to the entire interest in the rest and residue of the estate, intended by the will to be given to the trustees, and the trust as to the *entirety* of such rest and residue did not take effect, the appurtenant power to divide such entire rest and residue, given to the trustees, necessarily ceased; and with it ceased the power given to the trustees to make sale of any part of such rest and residue for the purposes of the division thereof. 1 *Sugden on Powers*, 2d Am. Ed., 507, commenting on Lord Roslyn's judgment in *Reade vs. Reade*, 5 *Vesey, Jr.*, 744, *Lib. Ed.*, 3d Am. Ed., *same page*.

It need not be said that if the power to divide the rest and residue of the estate, in its entirety, did not take

effect, and the power to sell any part of such rest and residue fell with it, the power given to the trustees to make conveyance of shares in such rest and residue, ascertained by the exercise of their supposed powers of division and sale, also necessarily fell to the ground.

It will be observed also that the trust as to the share of Louisa Gillett, another granddaughter of Lambert Gittings, and her children, ceased on the 21st of January, 1891, and that one-ninth part of the rest and residue then vested in her for life, and in her children for remainder, and that the power of the trustees to include this one-ninth part in their division, or to make sale of any part of it for purposes of division, or to convey one-ninth part of the said rest and residue to the said Louisa Gillett, with proper limitations, then wholly ceased.

These questions, originating in the facts as to the periods at which Eleanor A. Dulany and Louisa Gillett respectively, reached the age of thirty years, were not brought to the attention of the Court of Appeals in the case of *Dulany vs. Middleton,* 72 *Md.,* 67. They would seem to negative the supposed powers of the trustees to make a marketable title to the warehouse properties, sold to the defendant, unless this Court is of the opinion that the powers of the trustees, already referred to, were not appendant or appurtenant powers, but *collateral* powers, or powers *in gross,* which the trustees, as attorneys, (2 *Chance on Powers, sec.* 2681), could continue to exercise, notwithstanding the vesting of the interests of Eleanor A. Dulany, and Louisa Gillett in the rest and residue of their grandfather's estate, until these powers had been fully exercised.

The ruling of Sir JOHN LEACH, V. C., in *Trower vs. Knightley,* 6 *Maddock,* 91, seems to rest upon this theory, although it does not express it. That ruling, if it be adopted, undoubtedly leads to the conclusion that, as the trust, at the death of Lambert Gittings, necessarily con-

tinued in part until his granddaughter, Fanny, reached the age of thirty years, the testator must have meant to continue the powers of sale and division to the trustees *until there were owners competent to deal with the whole estate.* *Cooke vs. Simpson,* 46 *L. J. Chan., N. S.* 464–465; *Taite vs. Swinstead,* 26 *Beavan,* 525, 528, 529, 531, 532.

This case of *Trower vs. Knightley* was, to some extent, recognized and followed in the case of *Wood vs. White,* 4 *Mylne & Craig,* 18 *Eng. Chanc. Rep.,* 460, 478, *m. p.* 480; *Wood vs. White,* 4 *Mylne & Craig,* 460; *Ibid,* 2 *Keen,* 664. The case of *Wood vs. White, m. p.* 480, is also an authority that the trust as to the share of Eleanor A. Dulany had ceased when her grandfather died, and that the trust as to Louisa Gillett ceased on January 21st, 1891; and that the power of sale under the will, so far as it related to the interests of both of these granddaughters, has wholly ceased. But the case of *Trower vs. Knightley,* 6 *Madd.,* 91, will be taken probably to be the true law, as appears from the following cases: *Taylor vs. Grange, L. R.,* 15 *Chanc. Div.,* 165; *Peters vs. Lewes and East Grimstead R. W. Co., L. R.,* 18 *Chanc. Div.,* 430, 433, 435, Jessel, M. R.; *In re Cotton's Trustees, L. R.,* 19 *Chanc. Div.,* 624, 626, 629; *Biggs vs. Peacock, L. R.,* 22 *Chanc. Div.,* 284, 286, (Jessel, M. R.); *Taite vs. Swinstead,* 26 *Beavan,* 525, (Sir John Romilly, M. R.)

It is proper to say here, as was said by counsel in the case of *Wood vs. White,* just referred to, 18 *Eng. Chanc. Rep.,* 469, that the appellant is desirous to complete its contract, provided the Court is satisfied that a good title can be made by the appellees. But the Court must, as Lord Cottenham said in the case just referred to, p. 469, deal with the question upon the same principles, and require the title to be established with the same strictness, as if the cause had arisen between parties entirely hostile.

*Arthur W. Machen*, for the appellees.

The question in this case, is *res judicata*. In the case of *Dulany, and others vs. Middleton, and others, Executors and Trustees,* 72 *Md.,* 67, this Court was called on to construe the will of Lambert Gittings. The bill in that case, filed by the executors and trustees against the parties in interest, among other matters as to which direction was sought by the plaintiffs (who are the appellees in the present case,) contained the following statement: "In order to make the division of the real property contained in said residuary estate, in the manner provided in said will, sales of certain parcels thereof will or may be necessary or expedient, and your orators need instruction as to the extent and scope of the powers given them in said will, to make such sales; and for said purpose, and also to enable your orators duly and safely to execute the various trusts aforesaid, a judicial construction of the said will, and especially of the several clauses and provisions thereof hereinabove recited or referred to is necessary." And among the clauses of the will, so recited in the bill in said former case, were those expressive of the powers intended to be given to the trustees. The Circuit Court in that case, in its decree, passed the 15th day of August, 1889, by Judge DENNIS, adjudged upon this matter as follows: "And it is further adjudged, declared and decreed that the said trustees are by the said will, invested with full power to sell any part of the real or personal estate for any of the following purposes, viz., 1. The payment of debts or legacies. 2. To effect a division of the estate between the testator's two daughters and the Simons' grandchildren, and any sub-division of the share of the latter, as may be necessary or advisable in the discretion of the trustees; and 3. To change any investments whether of real or personal property in their sole discretion."

All the persons in being entitled to claim under Lambert Gittings were parties to that suit. On the appeal

taken from that decree by Mrs. Eleanor A. Dulany and other defendants, this Court, while differing from the construction given by the learned Judge of the lower Court to one of the other clauses of the will, affirmed the decree in all other respects. And in the opinion, to leave no room for doubt as to the approval of so much of the decree as related to the powers of the trustees, it is explicitly said: "With respect to the powers of the trustees, to sell any part of the real or personal estate, to pay debts or legacies, *or to effect division among the devisees and legatees according to the directions of the will;* or to make or change investments, whether of real or personal property, in their discretion, the terms of the will would seem to admit of no question. The terms of the will are plain in conferring such powers, to be exercised in the manner and under the circumstances designated by the testator. In all respects, except in the one particular mentioned, we agree with the Court below in the decree appealed from; but for the error referred to, we shall reverse the decree and remand the cause that the decree may be modified in accordance with this opinion." *Dulany, et al. vs. Middleton, et al., Executors, &c.,* 72 *Md.,* 81.

Upon the return of the cause to the Circuit Court, the required amendment was made, and the decree as finally passed, and declaratory of the powers of the trustees as above stated, has never since been disturbed or questioned.

It is with surprise that the trustees since the auction sale mentioned in the bill have learned from the counsel of the purchaser that their power to make *any* sale, however "necessary or advisable for the purpose of an equitable and satisfactory division of the estate," is doubted.

If there is any virtue in the principle of *stare decisis,* it would seem to govern this case. *Mitchell vs. Mitchell's Lessee,* 6 *Md.,* 224; *Dugan vs. Hollins,* 13 *Md.,* 149.

And if that principle applies where the previous decision construing a particular written instrument was given between parties not in privity with the party subsequently raising the question, it should operate *a fortiori* where the persons who may be supposed capable of calling it in question after a conveyance to the purchaser, were all actually parties to the previous case.

It seems demonstrably plain that no reasonable construction can be given to Mr. Lambert Gittings' will which would preclude the trustees and executors from exercising that power of selling property which is expressly given in the will, for the purpose of enabling them to perform the duty they are expressly required to perform, of dividing the estate.

It is said, however, that it appears that one or more of the grandchildren of the testator who were children when the will was made are now over thirty years of age and have passed the period of conventional minority during which their shares *when allotted* were to be held in trust for their benefit. The fact existed and was known when the bill in the said former case was filed, and was easily inferrible from the evidence, but can the fact itself at all lessen the necessity of a division of the estate? And does the testator anywhere within the four corners of his will intimate that he does not intend that his executors and trustees shall make the division, if one or more, or even all of the persons who are to take the shares after the division has been made, happen to have attained an age entitling them to enjoy their respective shares without the intervention of a further trust?

The will might, in some respects, have been more artificially constructed, but if anything is plain it is that this testator has had his mind directed distinctly to the division of his estate, and both for making it and the *manner* of making it, has provided with care and

great particularity. To take from his éxecutors the means of converting into money such parts of the realty as need to be so converted in order to enable them to effect the division he has directed, would be to defeat his intention in regard to a matter to which he gave much prominence and evidently attached great importance.

In logical order, as well as in the contemplation of the testator, the disposition to be made of the several shares respectively, came *after* the division, by which those shares were to be ascertained. The rule of *acceleration*, according to which gifts limited to take effect after the happening of certain events, future in the contemplation of the testator at the time of the making of the will, but which have actually happened in his lifetime, or afterwards, before its dispositions have gone into effect, is a familiar one and occasion arises very frequently for its application. It arises here, where the trust, as to the particular share of Mrs. Dulany, which would have preceded its vesting in possession in her, had she not attained the age of thirty years, is prevented from taking effect by this circumstance and the vesting in her of her *legal* life estate in that share is accelerated; but agreeably to the provisions of the will, it is thus accelerated only when the share has been segregated or separated from the rest of the estate by that division, which it is the duty of the trustee-executors to make.

Any power relating to that *share*, which the trustees might have exercised after the division had a trust attached to it, of course falls with that special trust; but this consideration has no connection with those powers which the executors as trustees of the entire estate are to exercise with reference to the as yet undivided entirety. This distinction between powers the exercise of which precedes division, and those which will or may be

called into exercise afterwards, is clearly recognized by the testator himself when he expressly gives his trustees (who are the executors) power and authority to sell any part of his estate, personal or real, 1st, to pay debts and legacies, 2ndly, to change the investment of the fund of $10,000 intended to be set apart as a fund to yield certain annuities, and after the expiration of the lives of the annuitants to fall into the residue, and 3rdly, for the purpose of a division of the estate. It is only after these preliminary objects have been provided for, that the testator proceeds to provide for the care of needed changes of investment of the respective *shares.*

Upon the whole, the case seems so clear to the trustees that but for the fact that Mr. Gwinn, as the counsel of the purchaser, has thought that a doubt exists as to their power to sell for purposes of division, they would not have supposed there was room for any question at all—more especially, since the decision of this Court in *Dulany vs. Middleton, et al., supra.*

Without hesitation, they made sales before the will was submitted to judicial construction, believing their power to be clear, and, after it was so construed, they supposed their action had been fully sanctioned, and have made other sales, of which this one only has been been called in question.

The testator devises all his estate to the trustees upon trust to divide it into three equal shares, and then subdivide one of them into three equal sub-shares; and no part of the estate goes out of them until they have made a division. Hence there is no occasion to discuss the distinction between powers appurtenant and in gross. And after all, the real question is what is the testator's intention?

*Wood vs. White,* 4 *Mylne & Craig,* 460, cited in appellant's brief, is essentially different from this case. There was in that case no devise of the entirety to the trustees,

but only of certain shares; there was neither any trust to divide, nor power for the purpose of enabling a division, and the actual power was indefinite as to time as well as object.

ALVEY, C. J., delivered the opinion of the Court.

The bill in this case was filed by the executors and trustees under the will of the late Lambert Gittings against the Johns Hopkins University, to obtain a decree for the specific performance of a contract of sale and purchase of two adjoining warehouses, in the City of Baltimore, sold by the trustees to the University, as part of the undivided estate of Lambert Gittings, the testator. The sale was formally and properly made at public auction, and was evidenced by writing, and the payment of $1000 as a deposit by the purchaser. There is no question or doubt made or suggested as to the sufficiency of the title of the testator, or as to the fairness of the sale by the trustees. But a question is raised by the purchaser as to the existence of power or authority of the trustees to make a valid sale of the property under the will of the testator, in the events that have occurred since the date of the will. The property is valuable, the price bid therefor being $60,800; and these two adjoining warehouses were offered and sold by the trustees for the purpose of enabling them to make division of the estate of the deceased among the devisees and legatees, according to the direction of the will.

Mr. Gittings, the testator, made his will in 1870, and died in July, 1887. He left surviving him two married daughters with children, and three granddaughters, the children of a deceased daughter, and which granddaughters were also married and had children.

The will of the testator was the subject of judicial construction by this Court, in the case of *Dulany, et al. vs. Middleton, et al.*, 72 *Md.*, 67; and to that proceeding

the executors and trustees, and the two daughters with their husbands and children, and the three granddaughters with their husbands and children, were all parties— the bill being filed by the executors and trustees against the other parties as defendants, for the purpose of obtaining a judicial construction of the will, and to have determined the extent of the powers of the trustees.

The estate of the testator was large, and consisted of real and personal property of various descriptions, and this entire estate he devised and bequeathed to three trustees (who were also named as executors) and the survivors or survivor of them, their heirs and assigns, *to hold* the estate to the uses and upon *the trusts expressed in the will.* He directs his debts and funeral expenses to be paid, and certain amounts to be paid out as legacies, and $10,000 to be invested to raise certain annuities, the principal of which sum to revert to his estate. He then directs that the trustees *shall hold in trust* the entire residue of his estate and property, together with the reversion of the sum set apart to raise annuities, and that *they shall first divide the whole of such estate devised in trust,* into three equal parts, having reference to the value of each part. Provision is then made for the allotment of the parts, one part to each of the two surviving daughters, Mrs. Middleton and Mrs. Buchanan, and one part to the three granddaughters, representing their deceased mother, Mrs. Simons; and this latter one-third part to be sub-divided into three equal parts, and one of the parts of such sub-division to be allotted to each of the three grandchildren in severalty. These several parts allotted to the two daughters and the three granddaughters the testator declared should be held "to the separate use and benefit of his said two daughters and three granddaughters respectively, according to the parts chosen by them, *as the same shall be allotted in the before-mentioned division,* free from any control of any present

or future husband, *for the term of their natural lives,* the annual product or avails thereof to go and inure to his aforesaid daughters, and granddaughters Simons respectively, and after each of their deaths respectively, the share of each to be *held by his trustees as aforesaid,* to the use of the children of his aforesaid daughters and granddaughters, and their heirs, executors and administrators." If this limitation to the separate use of the granddaughters had been left unaffected by subsequent provisions of the will, there could have been no question of the continuance of the trust in respect of the shares of the granddaughters during their respective lives. But, by the last clause of the will, the duration of the trust, as to the shares of these granddaughters, is expressly limited to the period when such granddaughters would attain the age of thirty years; from which time it is declared the trust shall cease and determine. That is to say, to quote the language employed in the last clause of the will, the trust "shall cease and determine in the case of each grandchild upon and as she reaches the age of thirty, so far as regards her share coming either directly from me or from her mother's proportion of my estate, and that such grandchildren or grandchild from that period and age (thirty) shall hold their respective shares, or her share, free and discharged of the said trust, to themselves for the term of their natural lives respectively, and after their deaths to the lawful issue of their bodies, their heirs and assigns forever; and the said trustees shall convey the shares of such grandchildren to them in accordance with this direction of my will."

Before, however, there could be an extinguishment of the trust *pro tanto* and a transfer of the respective shares to the granddaughters, or to either of them, as directed by the will, it was a necessary prerequisite that all legacies and charges upon the estate should have been paid

and satisfied, and that there should have been a division and allotment of the estate, real and personal, among and to the devisees and legatees, as specially provided for and directed by the will. And to this end, ample powers were conferred upon the trustees.

After directing the manner of dividing the estate into shares, and allotting the same to those entitled as *cestuis que trust*, the testator declared that it was his will and intention that his trustees should have power and authority to sell any part of his estate, real or personal:—First, to pay debts and legacies; second, to change investments, or to convert unsafe and unproductive stocks, and other personal or real estate; and third, if necessary or advisable, for the purpose of an equitable and satisfactory division of his estate, between his two daughters, Mrs. Middleton and Mrs. Buchanan, and his three granddaughters, the daughters of Mrs. Simons, deceased; and that the trustees should have like power in the case of and for the purpose of the sub-division as among his three granddaughters. It was in the supposed or intended exercise of this power of sale for the purpose of division of the estate, that the sale was made by the trustees to the present appellant.

It is alleged in the bill, and not denied by the defendant, that the residuary real estate of the testator is still undivided. It is admitted that Mrs. Eleanor A. Dulany, one of the three granddaughters entitled under the will, attained the age of thirty years before the death of the testator; and that Mrs. Louisa Gillett, another of those granddaughters, attained the age of thirty years in January, 1891. But it is alleged and insisted by the trustees in this case, that these facts in regard to the age of the granddaughters are wholly immaterial as regards the duty of the trustees to make division of the entire estate; and that their power, to that end, to sell the indivisible warehouse property, and any other real estate

which, in their best judgment, should be sold, to enable them to make a just and satisfactory division of the estate, according to the intention of the testator, as expressed in his will, is clear beyond doubt. The trustees also insist that the question of their power to sell the warehouses, as part of the residuary estate of the testator, to be divided among the *cestuis que trust*, is concluded by the opinion and decree of this Court, affirming the decree of the Court below in that respect, in the case of *Dulany, et al. vs. Middleton, et al.*, already referred to, reported in 72 *Md.*. 67.

The defendant, by its answer, takes the position that the trust, as to the interest or share of Mrs. Dulany in the residue of the estate of her grandfather, never attached or had operation, because of the fact that she had attained the age of thirty years before the testator's death; and that the trust ceased to have operation, as to Mrs. Gillett's share or interest in the estate, immediately upon her attaining the age of thirty years, though she attained such age after the death of the testator. In the answer, the objection is stated thus: That the power of sale for the purpose of division of the whole residue of the estate which was given by the will, was conferred upon the trustees as trustees only, and that such power ceased as to any and all portions of the whole residue of the estate, which were discharged from said trust on the arrival of any one or more of the *cestuis que trust* at the designated age of thirty years; and that it is matter of doubt to the defendant whether a trust, which was intended to operate upon the whole residue of such estate in its entirety, did not cease to have any operation when it could no longer operate upon such whole residue in its entirety.

In the case of *Dulany, et al. vs. Middleton, et al., supra,* the fact that Mrs. Dulany had attained the age of thirty years before the death of the testator, did not appear in

the record, and the fact was in no manner brought to the attention of the Court; and, of course, the decision of the case was not made with reference to any such fact. The question of the existence of the power of sale, however, was distinctly raised by the bill; and all the facts charged in the bill were admitted by Mrs. Dulany and her husband, as they were by all the other adult defendants; and they all submitted to such decree as the Court might think right to pass. It did not occur to any one in that case to suggest the question that is now raised by the present defendant. And without stopping to discuss the proposition, whether the opinion and final decree in that case, affirming the existence of the power of the trustees to make sale of the real estate of the testator for purposes of division, should be regarded as having concluded the question, we are clearly of opinion, that the facts now brought to the attention of the Court, as to the ages of the two granddaughters, can in no way, under the facts of the case, operate to defeat or extinguish the power of sale. And this power of sale is not a mere naked power in the trustees, but is coupled with the legal estate vested in them, and its exercise operates with reference to the shares or interest of each and all of the devisees and legatees entitled to take shares of the general residue of the estate, and that without regard to the fact that one of the granddaughters of the testator may have attained the age of thirty years before his death.

It is certainly clear that such devisees and legatees can only take their respective shares upon division and allotment of the estate, as directed by the will. Division must precede allotment. No one or more of such devisees can select any particular piece or parcel of property, constituting a part of the general residue, and demand a transfer or conveyance of it, though the period or event for the cessation of the trust has occurred, as

to such devisee. The entire legal estate is in the trustees, and it must remain there, to serve the purposes of the trust, until the primary duties prescribed by the will, and the execution of the testamentary scheme of the testator, are performed by the trustees. They may be compelled to execute the trust in accordance with the direction of the will; but until division and allotment be made, as the will directs, the main and principal duties imposed upon the trustees remain to be performed; and it is only through the performance of these duties that the devisees are entitled to the possession and control of their separate and ascertained shares. And, therefore, if it be *necessary or advisable in the judgment of the trustees, for the purpose of an equitable and satisfactory division of the estate*, that the power of sale should be exercised, in respect to the property in question, clearly, the exercise of the power is fully authorized, as well by the terms as by the general plan of disposition of the testator's estate. To hold otherwise would be to frustrate the manifest intention of the testator, and destroy the most prominent feature in his will.

It is unquestionably true, as a general principle, that if a power be given to trustees to be exercised *during the continuance of the trust,* such power cannot be exercised *after* the time when the trust has in fact, by specific limitation, been terminated, even though, from the delay of the trustees, it has happened that the trust has not been completely executed. But it is equally well settled, that if the trust continues as to part of the property, as it unquestionably does in this case, though it may, by the terms of the instrument creating it, have ceased as to part, the power will remain in force, and can be exercised over the whole, for the benefit of all concerned, unless there is a clear and imperative direction to the contrary. This is the principle of the case of *Trower vs. Knightley,* 6 *Madd.,* 134, a decision by Sir

JOHN LEACH, Vice-Chancellor. In that case there was an estate devised in trust for two daughters in moieties for life, with remainders in each moiety for their children at twenty-one years of age, and a power of sale was given to the trustees, to be executed during the continuance of the trust; and one daughter having died and her children attained the age of twenty-one, and the trust therefore having determined as to their share, the Vice-Chancellor, nevertheless held that the trustees had power to sell the whole estate, under the terms of the devise; it being necessary that the trustees should have the right to sell the whole estate, in order to preserve the trust for the full benefit of those entitled to the other half of the trust property. The principle of that case has been adopted and followed in several subsequent cases in the English Chancery; as in the case of *Taite vs. Swinstead*, 26 *Beav.*, 525, and that of *Cotton's Trustees and The School Board for London*, 19 *Chan. Div.*, 624. See 2 *Perry on Trusts, sec.* 498. And this same principle was fully recognized as established by Lord Chancellor COTTENHAM, in his elaborate judgment in the case of *Wood vs. White*, 4 *My. & Cr.*, 460, though the facts of that case did not require its application. All the cases applying the principle proceed upon the simple ground that the trust powers are necessary to be preserved in order to give effect to the plain and manifest intention of the testator, and to avoid defeating a settled and well defined plan for disposing of his estate.

We entertain no doubt of the continued existence of the power of sale over the entire property sold to the appellant, nor of the right of the trustees to exercise it; and therefore the decree of the Court below should be affirmed.

None but the trustees and the purchaser are parties to this case. But it would seem to be well settled that there is no necessity or propriety, according to English

precedent and decision, for making the two granddaughters and their husband and children parties. They were not parties to the contract of sale, and no decree would be passed against them; and the decisions are express to the effect, that to an ordinary bill for the specific performance of a contract of sale, the parties to the contract are the only proper parties to be brought before the Court. *Wood vs. White*, 4 *Myl. & Cr.*, 460; *Robertson vs. The Great Western Railway Co.*, 10 *Sim.*, 314; *Taite vs. Swinstead*, 26 *Beav.*, 525; *Cotton's Trustees and The School Board for London*, 19 *Ch. Div.*, 624. In this case there is no exception taken to the bill by the defendant for want of proper parties.

*Decree affirmed.*

(Decided 8th June, 1892.)