## ISAAC H. SHIRK ET AL. *vs.* W. BURNS TRUNDLE ET AL., TRUSTEES.

*Assignment For Benefit of Creditors—Limitation of Time For Completion of Trust—Trustees Sales—Inadequacy of Price—Notice of Sale.*

When a deed conveying real estate to trustees with directions to sell the same for the benefit of the creditors of the grantor provides that "this trust shall be closed within two years from the date hereof," such provision as to the time of completing the trust is directory and not mandatory, and a valid sale of the property may be made by the trustee after the expiration of two years.

Upon exception to the ratification of a trustee's sale of real estate on the ground of inadequacy of price, *held*, that the evidence fails to show that the price obtained was so grossly inadequate as to require the Court to set aside the sale.

When the trustees to make sale of property report under oath that they advertised the property for more than three successive weeks before the day of sale, the presumption that such notice of the sale was given is not rebutted by symbols placed by the printer at the end of the advertisement.

Appeals from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John Prentiss Poe* and *Thomas S. Hodson* (with whom was *Henry Shirk* on the brief), for the appellants.

*W. Burns Trundle*, for the appellees.

FOWLER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court No. 2, of Baltimore City, ratifying certain sales made by Messrs. Trundle, Knapp & Thomas, trustees, under a deed of trust executed by Isaac H. Shirk for the benefit of his creditors on the 12th December, 1899. Upon the execution of this deed

Circuit Court No. 2, of Baltimore City, assumed jurisdiction of the trust by its order of the 13th December of the same year.

This deed thus confers upon the trustees a power of sale: "To hold the same (the trust property) to collect the rents, &c., and to pay the liens and expenses thereon until such time as they can sell the same or any portion of the same, which sale or sales shall be for the most money they can realize therefor and the time of the sale or sales and the terms thereof and the manner thereof, are left entirely to their judgment and discretion, to be exercised as they, the survivors, &c., shall think best calculated to promote the interests of all parties concerned in this trust, and after they, &c., have sold said property or any portion thereof, after paying all necessary expenses, &c., * * * the net proceeds of such sale or sales shall be paid to the following persons." Then follows a list of creditors of the grantor who are directed to be paid according to their respective priority. The surplus, if any, is directed to be paid to the grantor, and then follows this provision: "And this trust shall be closed within two years from the date hereof."

Among the property thus conveyed to the trustees named, are the two lots here in question, viz., Nos. 2124 and 2126 Maryland avenue, Baltimore City. On the 10th October, 1901, the Court below on the petition of the trustees, ordered them to sell these two improved lots just mentioned at public auction on the respective premises, upon giving the usual notice, and upon such terms as are prescribed in decrees in chancery. In pursuance of this order the sale was advertised for the 18th November, 1901, but before the day of sale arrived Henry Shirk, a creditor of Isaac Shirk, filed a petition asking the Court to rescind the order of sale. After answer by the trustees and hearing, this petition was dismissed, and the sale was had on the 18th November, 1901, pursuant to notice. The next day after the sale the trustees filed their report of sale to the effect that they had sold No. 2124 Maryland avenue to Hugh Brent and others for $6,500, and No. 2126 Maryland avenue to George R. Willis for $7,500. On the same day the sale

was reported Henry and Isaac Shirk filed exceptions to the reported sale, and a few days thereafter additional exceptions were filed by William J. Sneeringer. After hearing, all these exceptions were overruled, and the exceptants all appealed, each taking a separate appeal. These appeals, however, may all be considered together, because all of the exceptions rest upon one or more of the three following objections : First, that the property was not advertised for three weeks as required by the practice and rules of Courts of equity and as ordered by the Court; second, that the power of sale could not be validly exercised after the lapse of two years from the date of the deed of trust which conferred it upon the trustees and lastly, inadequacy of price.

We will briefly consider the three objections to the ratification of the order ratifying the sale.

1. Was the sale properly advertised for three weeks? It does not appear that this question was raised below by any of the exceptions, nor is it suggested in the briefs, but it was argued with apparent earnestness at the hearing. We are unable, however, to find any foundation in the record for the contention. In the report of sale which is sworn to by all three of the trustees they declare that they advertised the property for more than three successive weeks before the day of sale, but in addition to this the testimony of Mr. Thomas is to the same effect. As against this direct and positive testimony there is nothing offered but the somewhat obscure symbols placed at the end of the advertisement by the printer. We are unable to see any force in this objection.

2. Is the provision in the deed to the effect that the trust shall be closed within two years from the date of the deed merely directory or mandatory? The contention of the exceptants is that by virtue of this provision the powers of the trustees, including the power to sell, ceased immediately upon the expiration of two years from the date of the deed of trust ; that is to say their powers ceased on and after 12th December, 1901. It will be noticed, however, that the sale of this particular property mentioned in the deed was made on the 18th

November, 1901—before the expiration of the two years' limit—so that upon the payment of the money and the execution of the trustees' deeds the purchasers named in the reports of sale would take title from the day of sale, and the property will, therefore, vest is them free of the trust before it is to end even upon the contention of the exceptants. But we cannot agree that the proposition here contended for by the exceptants is supported either by reason or authority. It cannot be supposed that the creditors would, when the deed was made, for a moment have acceded to the proposition that if these trustees for any reason should be unable to close the trust in two years their powers should cease, the trust property, or such portion of it as should remain in their hands, revert to the grantor, and that if the trust was to be administered to a close, a new deed would have to be executed and new trustees appointed. Such a construction would not only be dangerous to the interests of the creditors, but would result in delay and increased cost and expense. If any such termination of the trust had been contemplated ordinary prudence on the part of the creditors would have suggested to them to insist upon the insertion of a provision to take care of the trust property in case of such a contingency. It appears to us, therefore, that the absence of any such provisions in the deed, shows that it was not in the contemplation of anybody when the deed was made that the trust was to end on the 12th December, 1901.

If the grantor had inserted a clause in the deed to make it mean what it is now contended it does mean, the creditors would not have accepted it, and indeed they would have been justified in contending it was conclusive evidence that the grantor did not intend by such a deed to fairly and fully dedicate his property to the payment of his debts.

It is equally clear from authority that the provision in the deed is merely directory and not mandatory. Thus, "A trust to sell with all convenient speed within five years is directory;" 2 *Perry on Trusts*, secs. 490 and 771; *Lewin on Trusts*, (9 ed.) pp. 469 and 470. In *Pearce* v. *Gardner*, 10 Hare, 287, VICE CHANCELLOR TURNER said: "The trusts created by the will of

the testator are, with all convenient expedition, *and within five years* after his death to sell and convey the premises. There is nothing in the will importing a negative on a sale being effected by the trustees after the expiration of the five years." And to the same effect, *Shalter and Ebling's Appeal*, 43 Pa. St. 83 ; *Hale* v. *Hale*, 137 Mass. 170; *Marsh* v. *Love*, 42 N. J. Eq. 112; *Mott* v. *Ackerman*, 92 N. Y. 539. We find nothing in *Lockett* v. *Hill*, 1 Woods, U. S. 566; *Huntt* v. *Townshend*, 31 Md. 336; *Richardson* v. *Sharpe*, 29 Barb. 222; *Johns Hopkins University* v. *Middleton*, 76 Md. 205, in conflict with the conclusion we have reached, namely, that under the true construction of this deed the power of the trustees to make the sale continued and existed in full force when the sale now objected to was made. The cases, such as *Dunshee* v. *Goldbacher*, 56 Barbour, 579, and others cited by exceptants which hold that a power of sale to *executors* to sell in a time limited must be exercised, if at all, within that time, do not, we think, control here, for whether there shall be a sale at all or not depends upon the intention of the testator, and it may well be that if he clearly says the power of sale shall be exercised within six months or six years, he did not intend there should be a sale thereafter. But here the situation is quite different. The whole object of the deed is to give the trustees power to sell for the payment of debts. A sale there must be from the nature of the case, in any event, and if the power is not exercised by these trustees it must be by others. It is difficult to understand, therefore, what legitimate object the grantor could have had in thus limiting the power of the trustees.

3. Finally is there anything in the record to sustain the objection that the property was sacrificed—that it was sold for a *grossly* inadequate price ?

It is settled by all the authorities that mere inadequacy is not sufficient to authorize the Court to set the sale aside. To be objectionable the price must be grossly inadequate. It appears from the evidence of the exceptants that the property was in their opinion worth from twenty to twenty-five thou-

sand dollars.   It appears also, however, that the houses were built more than thirty years ago and that both of them are more or less out of repair.   The witnesses who gave the high estimates of value were not specific and satisfactory as to the cost of necessary repairs to make these houses desirable for residences.   The testimony offered by the appellees places the value of No. 2126 in its present condition at from seven to seven thousand five hundred dollars.   JUDGE STOCKBRIDGE who testified in behalf of the respondents said that he attended the sale for the purpose of bidding on the corner house (2126) that he had had an estimate made of repairs which amounted to between $2,500 and $3,000 and considering the frontage of the property and the difficulty of renting it, he did not feel that he would be warranted in paying above $7,000.   Estimating that with the necessary repairs added the house and lot would cost $10,000 which seemed to him to be the fair market value.   Mr. Willis who purchased the corner house for $7,500 testified that he, like the preceding witness, had it carefully examined before the sale and he had examined it himself and he estimated it would cost $3,000 to put it in tenantable condition.   He further testified that since the sale he had employed a competent builder to examine the house and estimate the cost of repairs.   His own estimate was confirmed by the report of the builder.   Another witness, Mr. Spalding, testified to about the same effect and said that the price paid by Mr. Willis for 2126 was as much as it would bring at another public sale.   Assuming that it would cost $3,000 for repairs the house which Mr. Willis purchased will cost him more than its present assessed value in fee under the general assessment of 1896.

It is conceded that the other house, (2124 Maryland Avenue) is not worth as much as 2126.   It was sold for $6,500 and is assessed at $8,200.

We have examined all the testimony on the subject of inadequacy of price and without further comment upon it we are satisfied it does not sustain the contention of the exceptants.

There is nothing to show that the sale was not perfectly fair. It was well attended by persons who were able to bid and purchase if they believed the property, under all the circumstances, was worth more than it brought at the sale which is now sought to be set aside.

*Order affirmed with costs.*

(Decided January 14th, 1903.)