## ROBERT A. DODSON ET AL., TRUSTEES, *vs.* GEORGE W. ASHLEY.

*Power of Testamentary Trustees to Sell Property for Division at Termination of Trust.*

A testator gave the residue of his estate to trustees to hold for the benefit of his children with power to sell any part of the estate and hold the proceeds in lieu of the property sold; and when the youngest child arrived at the age of twenty-one, the trustees were directed to divide the property into as many equal parts as there were children and to transfer and deliver one of said parts to each of five named children and to retain the other shares in trust for five other designated children. When the youngest child arrived at age the trustees held a tract of land which was not susceptible of division and this tract they sold to a party who alleged that the trustees were not authorized to sell the property for the purpose of division. *Held,* that the testator contemplated the exercise of the power of sale in connection with the division of the property at the time when the trustees were directed to divide the same so as to make the shares equal, and that therefore the trustees were empowered to make sale of said tract of land.

Appeal from the Circuit Court of Baltimore City (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Joseph C. France* (with whom was *George R. Willis* on the brief), for the appellant.

*John Watson, Jr.*, for the appellee.

JONES, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City sustaining exceptions to a sale reported thereto by the appellants as trustees under the will of Richard S. Dodson and refusing ratification of the sale upon the ground of want of power in the trustees (appellants) to make the same. The testator named, by his will admitted to probate in the Orphans' Court of Baltimore City on the 31st of March, 1897, in the first, second, third and fourth clauses thereof makes certain small pecuniary bequests—each of them to church named. In the fifth clause he provides as follows: "I give and bequeath unto my wife, Emma W. Dodson, all of the capital stock held by me in the Citizens' Bank of Norfolk, Va., and of the City National Bank of Norfolk, Va., and my house and lot of ground situated in the city of Baltimore and designated as No. 22 East Huntingdon avenue, so long as she remains my widow of for the term of her natural life and from and immediately after her marriage or her death, whichever shall first occur, then the same shall go to and become the absolute property and estate of any of her issue, by me begotten, *per stirpes* and not *per capita,* and in default of such issue then the same shall go to and become a part of the rest and residue of my estate, to be divided as hereinafter provided of and concerning the said rest and residue of my estate."

As to the residue of his estate the will provides as follows: "All the rest and residue of my estate (all of the rest and residue of my property, after paying the legacies above mentioned, real, personal and mixed) I give, devise and bequeath unto my son, Robert A. Dodson, and my son-in-law, Edward W. Robinson, whom I will call my trustees, in trust and spe-

cial confidence, however, for the uses and purposes hereinafter declared of and concerning the same that is to say: First, in trust to hold, manage and control all of the said rest and residue of my worldly estate (which I will for convenience call my trust estate) with full power to dispose of the same as herein presently declared, until the youngest of my surviving children hereinafter named shall arrive at the age of twenty-one years. In the meantime my trustees shall distribute and pay over equally amongst all of my children namely * * * the net annual income which may be derived therefrom, the child or children of any deceased, child or children above named, standing in the place of his, her or their parents *per stirpes* and not *per capita;* with full power in my trustees and their successor, to sell any part of my trust estate for such an amount as they, my trustees or their successor, shall determine upon, in the exercise of their discretion and to execute all proper papers, sufficient in law to invest their grantee with the title thereto, without any liability of such grantee to see to the proper application of the purchase-money, and my said trustees shall hold the proceeds of all such sales, in lieu of the property transferred, subject to the provisions of this my will. Second. That when and as soon as my youngest surviving child, of those above named, shall arrive at the age of twenty-one years, I direct my trustees or their successor, to divide my trust estate into ten equal parts, having reference to the quantities and values thereof, and to transfer and deliver one of said equal parts unto each of my children, Robert——Richard ——William———Harry———and Maria H.———absolutely, freed, clear and discharged of and from the trust hereby created; and to hold and retain one of said equal parts, in further trust and confidence for each of my children, L. Berry ——Mary D.——Flora——Herbert——and Lillian who may be living at the time of the division of my trust estate (the child or children of any of my said children, who may have departed this life before such division to be entitled to receive the share or shares of my said child or children so dying) for and during the respective terms of their natural lives, and

upon the death of each of my said last-named children whose share shall have been held in trust, upon the division of my trust estate, then to hold in trust for the use and benefit of the issue of such child or children, living at the time of his or her death until such issue shall arrive at the age of twenty-one years then to transfer and deliver that interest unto them equally *per stirpes* and not *per capita;* my trustees and their successor, paying unto them in the meantime, the net income derived from their respective shares semi-annually, and paying therefrom all public dues," &c.

Then after making provision for the event of any of his children, for whom the trust was to continue, dying without leaving issue, in another clause he provided for the case of one or more of his sons exercising an option to take a hotel property at Norfolk, Va., from the trustees "in making a fair and equitable division of my (his) trust estate;" and authorized the trustees to allot the said property to such son or sons; "and if the valuation placed upon the hotel property in the division of my (his) estate should not be equal to his or their share or shares" of the trust estate, it should be charged to his or their share" of the estate; but if the valuation of the property should exceed the value of such share or shares then the difference to be paid to the trustees in cash. By a codicil to the will he added the appellant, Harry C. Dodson, as one of the executors and trustees under the will.

On the 13th of December, 1904, the trustees named in the will reported to the Circuit Court that the youngest child left by the testator had passed the age of twenty-one years; that of the trust estate in hand which had not been divided because not susceptible of division was a lot of ground, &c., particularly described in the report; and that in execution of their trust they had sold the same to the appellee here and asked that the sale so made be ratified. The purchaser (appellee) filed exceptions to the sale. From the order passed on these exceptions the appeal was taken.

The contention on behalf of the appellee is that by the terms of the will the power of the trustees to sell was determined by

the fact reported, that the youngest child of the testator had passed the age of twenty one years; that the trustees have no power to sell for division. The controlling factor in determining the question presented is the intention of the testator as that may be found manifested in his will. No authority is needed for this proposition but reference may be made to 4 *Kent Com.*, 345, where the principle is stated as follows: "The intention of the donor of the power is the great principle that governs in the construction of powers; and in furtherance of the object in view, the Courts will vary the form of executing the power, and as the case may require, either enlarge a limited to a general power, or cut down a general power to a particular purpose." Among cases illustrating the application of this principle are those cited in the argument of *Tyson* v. *Latrobe*, 42 Md. 325; *Johns Hopkins University* v. *Middleton*, 76 Md. 186, and *Shirk* v. *Trundle*, 96 Md. 177.

The trustees here have not a mere naked power. They have the power in connection with, and as appendant to, the legal estate with which they are vested and of which they will not be divested until the purposes of the trust have been fulfilled. The testator left a considerable estate consisting of different kinds of property and situated in different localities— some of it out of the State. All of this estate he placed in the hands of persons—members of the family in whom he evidently reposed the utmost confidence—first to care for, manage and control for the best interests of the beneficiaries thereof; and then at a time indicated by him, to divide the property into as many equal parts as there were children, of whom there were ten, and "to transfer and deliver one of said equal parts unto each of" five children whom he named; "and to hold and retain one of said equal parts" in trust for each of the five remaining children whom he also specified by name. He did not direct that the property should be turned over to be divided; nor indicate that any other agency was to be invoked in making the division. The express direction is that the trustees are, themselves, to divide it. He commits this to their skill and judgment and it is their discretion that it is to

guide in carrying out this direction.    It is as much a part of the trust therefore for the trustees to divide the property as directed and "to transfer and deliver" the several shares as directed as it was for them to hold and manage it.

The division of the property could not be made until the arrival of the time designated by the testator for a division.    Up to that time the trustees were to hold and manage it.    When that time arrived the division could not be made *eo instanti·* The trustees could only proceed to take the necessary steps to make the division; and only after these were perfected would they be prepared to execute the final act "to transfer and deliver" the shares.    In the meantime the legal estate would remain in them, and why not the power of sale coupled with it, as that power has been here conferred?    The terms employed in conferring the power are general—"with *full* power in my trustees and their successor, to sell, &c.," is the language used.    Restriction upon the power as to object and duration is to result as matter of construction.    It is not in terms a power directed to a particular object; nor is its duration in terms limited to a particular period.    In the direction to the trustees to divide the property, &c., no technical words are employed going to indicate a mode of division.    They are not directed to make partition.    They are directed in untechnical language to "divide the property," and to divide it so as to make the shares equal.    To do this a sale of it may be required and the trustees to whom it is entrusted to make the division, report that a sale is necessary.    The necessity for such sale could readily have been foreseen, and it is reasonable to suppose the testator, in providing for the division as he did, had in contemplation this necessity.    If so why should he have intended to withhold from his trustees this necessary means of effectually executing this important part of the trust he committed to them, while allowing them freely to possess and exercise it up to the time the duty in this regard was to be performed?    We do not think such an intention ought to be imputed by construction.    The implication is otherwise.

It is not to be supposed, under the scheme of this will, and

in view of the general intent, as to the control the trustees should have over the property, manifested by the testator, that he intended the power to sell, conferred in the language and terms that it is, should be restricted simply to the management of the trust. An implication that the testator contemplated the exercise of the power of sale in connection with the division of the property arises out of the provision in his will in reference to the Norfolk hotel property where he thought it necessary to provide specially for that being dealt with in kind. We think upon a proper construction of the will in question the trustees have, for the purpose of making division of the property held in trust by them, as the will directs, the power to make sale thereof where in their judgment the necessity arises for so doing, and shall therefore reverse the decree of the Court below.

> *Decree reversed with costs to the appellants, and case remanded.*

(Decided June 23rd, 1905 )