Argued September 8; reversed September 26; rehearing denied
October 24, 1933

## WILLIAMS *v.* MORRIS

(25 P. (2d) 135)

*Fred A. Williams,* of Salem (John H. Hall, of Portland, on the brief), for appellant.

*Lester G. Oehler,* of Corvallis (Arthur Clarke, of Corvallis, on the brief), for respondent.

BAILEY, J. This suit was instituted on May 7, 1930, by W. H. Hurlburt, trustee, against J. E. Morris, to quiet title to certain real property situate in Lincoln county, Oregon. Thereafter said W. H. Hurlburt as trustee filed an amended complaint, to which the defendant demurred on the following grounds: (1) that the plaintiff did not have legal capacity to sue; and (2) that the complaint did not state facts sufficient to constitute a cause of suit.

The demurrer was sustained, the plaintiff refused to plead further and a decree was entered dismissing the suit, from which decree the plaintiff appeals.

The only question here involved is whether or not the demurrer was properly sustained. The amended complaint alleges that the Agate Beach Land Company was an Oregon corporation and existed as such until January 21, 1921, at which time it was dissolved pursuant to the proclamation of the governor of this state; that said corporation had acquired extensive holdings of real property located in Lincoln county; and that in 1918 it had conveyed the same to S. G. Irvin as trustee, pursuant to a resolution of the stockholders of the corporation. Mr. Irvin was at that time the president of said corporation.

The resolutions of the stockholders of the corporation authorizing such transfer are set forth and made a part of the amended complaint. The first of these resolutions recites that a stockholders' meeting was held on March 12, 1918, at which time the owners of 393 out of 630 shares of the capital stock of the corporation were present and participated; that the meeting was called for the purpose of considering dissolving the corporation and winding up its affairs; and that after the statement of the financial condition of the

corporation was presented a resolution was adopted, in part as follows:

"Whereas, the financial affairs of this corporation are in bad shape and the corporation is owing indebtedness that it can not at this time pay, and that it has a considerable amount of real property in Lincoln county, Oregon, that is heavily encumbered with mortgages, and that there is no present demand for said property by purchasers; therefore, be it

"Resolved: That said corporation be dissolved and its affairs wound up, its debts paid, and the surplus, if any, be distributed to its stockholders in proportion to the shares held by them."

After the adoption of the foregoing resolution, a second resolution was offered and adopted which, after reciting the fact that the stockholders had unanimously passed a resolution dissolving the corporation "and requiring its debts to be paid, its affairs to be wound up, and the surplus, if any, to be distributed among its stockholders", reads as follows:

"Therefore, be it resolved: That the president of this corporation, S. G. Irvin, be constituted as the trustee of this corporation, with full power to sell and dispose of all of its property, both real and personal, to pay its indebtedness, and to distribute the surplus, if any, after the payment of its debts and obligations, to the stockholders; and, to accomplish that end, that a deed of conveyance be executed by the president and secretary of this corporation to S. G. Irvin, as trustee, of all of the real property owned and held by this corporation, whether said interest be legal or equitable, and wherever said property may be situated, and that the said trustee shall manage and dispose of said property for such prices and on such terms as may seem best to him, and that the purchasers from said trustee shall be under no duty or obligation to see that the trust funds arising from said sale are properly applied, and that the said trustee be and is hereby au-

thorized to borrow money upon said property, or any part thereof, for the purpose of paying taxes or any lawful assessments or legitimate charges of any kind whatsoever  *  *  *.  And that generally, he shall have power and authority to handle and dispose of said property in any manner that he may deem best and for the benefit of the stockholders''.

''That the trusteeship hereby created shall expire at the end of six years from the date of its acceptance, at which time the affairs of said corporation must be fully wound up''.

''That this resolution shall operate as a transfer of title to all of the personal property, of every name, nature and kind, belonging to said corporation.''

These resolutions were not made a part of the deed from the corporation to Irvin as trustee, but were acknowledged and filed for record.

The amended complaint further alleges that the deed from the corporation to Irvin as trustee was for the benefit of the creditors and stockholders of said corporation.  Mr. Irvin continued to act as trustee until his death on November 28, 1922, at which time a very small part of the property so conveyed to him had been sold and most of it remained unsold.

Thereafter a petition was filed in the circuit court for Lincoln county requesting the appointment of a trustee to fill the vacancy caused by the death of Mr. Irvin, and after proper proceedings, had within six years after these resolutions were adopted, W. H. Hurlburt was duly appointed and qualified as such trustee and was so acting, according to the allegations of the complaint, at the time of the filing of this suit.

Paragraph IX of the amended complaint is as follows:

''That the interest of the plaintiff is at this time prior, paramount and exclusive to that of any other

person or persons in and to the following described premises situate in Lincoln county, Oregon, to-wit: [here is set forth a description of the property involved in this litigation.] and was at the time of the bringing of this suit; and that neither the plaintiff in this suit, nor the defendant, nor any other person, was at the time of bringing this suit, or is now, in actual possession of said real property, and the plaintiff is entitled to the full, complete and exclusive possession thereof to the exclusion of all other persons.''

After alleging that the defendant claimed some interest or estate in and to the property described in the amended complaint, adversely to the plaintiff, and that such interest or estate of the defendant was without right, plaintiff asked that his title to the property be quieted as against said defendant.

After the decree was entered in the circuit court dismissing the suit and an appeal had been taken to this court, W. H. Hurlburt died and Fred A. Williams was appointed trustee and substituted for said W. H. Hurlburt.

Counsel admit that the plaintiff, W. H. Hurlburt, trustee, had the same right to maintain this suit that S. G. Irvin would have had, if death had not intervened to prevent him from carrying out the trust imposed in him. In other words, no question is raised as to the regularity or validity of the appointment of Hurlburt as trustee or as to his right, within six years from the acceptance of the trust by Irvin, to do anything and everything which Irvin could have done relative to the trust property. It is further conceded that the present trustee has the same right to maintain this suit that either Irvin or Hurlburt would have had after the expiration of said six years.

The respondent's contention, however, is that by virtue of a clause in one of the resolutions above quoted the trust terminated six years after its acceptance by Irvin; that from that time forward Hurlburt had no interest whatever, as trustee or otherwise, in or to any of the property formerly belonging to the Agate Beach Land Company; and that by operation of law and the limitation of time stated in the resolution, he became divested, at the expiration of said six years, of both the legal and the equitable title to the land. The wording of this resolution relied on by the respondent is as follows:

"That the trusteeship hereby created shall expire at the end of six years from the date of its acceptance; at which time the affairs of the corporation must be fully wound up."

The creator of a trust, without question, has the right to designate the powers and duties of the trustee and the duration of the trust. The difficult problem sometimes is to determine the intention of the trustor. The same rule of construction applies in the interpretation of an instrument creating a trust as controls in constructing any other document, to-wit: that the intention of the maker of the instrument must, if possible, be determined and given effect. The instrument, moreover, must be construed as a whole and not by reference to only a part thereof. In the instant case we must bear in mind the circumstances surrounding the creation of the trust and place ourselves, as far as possible, in the position of the stockholders of the corporation at the time the resolutions above referred to were adopted.

Applying these principles, we find that in 1918 the Agate Beach Land Company was in financial diffi-

culties, owing indebtedness that it could not at that time pay, but on the other hand owning considerable property for which there was no demand. In order to protect its creditors and to save as much as possible for the stockholders of the corporation, a special meeting of the stockholders was held, at which time it was determined to transfer all the assets of the corporation to a trustee and to dissolve the corporation. The transfer of all the real and personal property of the corporation was made to its president as trustee with full power in him to sell and dispose of said property in any manner that he might deem best for the interests of the creditors and the stockholders, and to distribute any "surplus" among the stockholders according to the amount of stock held by them.

That part of the resolution providing that the trusteeship should expire at the end of six years also provided that the affairs of the corporation must at that time "be fully wound up". No provision was made as to what should be done with the property of the corporation in the event that all its creditors were not paid at the end of six years; nor was any provision made as to how any real property remaining unsold should be distributed at the expiration of the six years.

In the case of *Dodson v. Ashley,* 101 Md. 513 (61 Atl. 299), the will of the decedent granted to the trustees named therein full power to manage and control the estate, with full authority to dispose of the same, until the youngest child should arrive at the age of twenty-one years. It was contended in that case that upon the youngest child's reaching the age of twenty-one years the trustees no longer had any power to sell or convey any of the property. In passing upon this question, the Supreme Court of Maryland held:

"The controlling factor in determining the question presented is the intention of the testator as that may be found manifested in his will. No authority is needed for this proposition, but reference may be made to 4 Kent, Com. 345, where the principle is stated as follows: 'The intention of the donor of the power is the great principle that governs in the construction of powers; and in furtherance of the object in view the courts will vary the form of executing the power, and, as the case may require, either enlarge a limited to a general power, or cut down a general power to a particular purpose'. Among cases illustrating the application of this principle are those cited in the argument of Tyson v. Latrobe, 42 Md. 325; Johns Hopkins University v. Middleton, 76 Md. 186 (24 Atl. 454) and Shirk v. Trundle, 96 Md. 177 (53 Atl. 928). The trustees here have not a mere naked power. They have the power in connection with, and as appendant to, the legal estate with which they are vested, and of which they will not be divested until the purposes of the trust have been fulfilled."

In *Shirk v. Trundle,* 96 Md. 177 (53 Atl. 928), the deed of trust contained the following provision: "And this trust shall be closed within two years from the date hereof". In passing upon the question of whether or not the trustees had any power after the expiration of the said two years, the court there observed:

"Is the provision in the deed to the effect that the trust shall be closed within two years from the date of the deed merely directory or mandatory? The contention of the exceptants is that by virtue of this provision the powers of the trustees, including the power to sell, ceased immediately upon the expiration of two years from the date of the deed of trust; that is to say their powers ceased on and after 12th December, 1901. * * * But we can not agree that the proposition here contended for by the exceptants is supported either by reason or authority. It can not be supposed

that the creditors would, when the deed was made, for a moment have acceded to the proposition that if these trustees for any reason should be unable to close the trust in two years their powers should cease, the trust property, or such portion of it as should remain in their hands, revert to the grantor, and that if the trust was to be administered to a close, a new deed would have to be executed and new trustees appointed. Such a construction would not only be dangerous to the interests of the creditors, but would result in delay and increased cost and expense. If any such termination of the trust had been contemplated, ordinary prudence on the part of the creditors would have suggested to them to insist upon the insertion of a provision to take care of the trust property in case of such a contingency. It appears to us, therefore, that the absence of any such provisions in the deed, shows that it was not in the contemplation of anybody when the deed was made that the trust was to end on the 12th December, 1901.''

*Pearce v. Gardner,* 10 Hare 287, decided in 1852 by the English High Court of Chancery, is one of the precedents frequently cited and relied upon in cases involving the termination of trusts. There a contro· versy grew out of the devise of real property which provided that the trustees should, with all convenient expediency and within five years after the testator's decease, absolutely sell and convey the real property. In considering this matter, the Vice Chancellor said:

''The trusts created by the will of the testator, are, with all convenient expedition, and within five years after his decease, absolutely to sell and convey the premises. There is nothing in the will importing a negative on a sale being effected by the trustees after the expiration of five years. If there had been a provision negativing any sale by the trustees after that period, there might have been a sufficient ground for this court refusing to interpose to enforce specific performance of the agreement. The questions here are,

whether, on the true construction of the will, the words which direct that the sale shall take place 'with all convenient speed and within five years', are directory, and merely indicate the time in which the testator has desired that the trust should be executed, or whether they are imperative that the trustees shall effect the sale within and not after the five years. The answer to these questions depends upon the construction of the entire will. * * * The question then after all is, whether it is to be collected from the will, that the sale, which must at any rate be effected notwithstanding the lapse of the five years, may not after that time be made by the trustees, or whether it must then be made under the direction of the court of chancery by the act of the court. I can not impute the latter intention to the testator, especially as I find that he has directed that his trustees are to be the parties who are to apply the trust funds in the payment of his debts. I think that the expression of the will as to the five years is only directory to the trustees, that they might make the payments out of the trust funds within that time, if possible.''

See, also, in this connection: *Stork v. Merchant,* 125 S. C. 377 (118 S. E. 530, 31 A. L. R. 1392), and the annotation with reference to the last citation; *Kennedy v. Mangan,* 278 Fed. 1009; *Hale v. Hale,* 137 Mass. 168; *Smith v. Kinney's Executors,* 33 Tex. 283; *In re Scott's Will,* 204 N. Y. S. 478; *Helfrich v. Dandy,* 160 Md. 338 (153 Atl. 57); 39 Cyc. 96, 97; 5 C. J. 1195; Perry on Trusts (7th Ed.), Vol. 2, § 490.

The clause in the resolution providing that the trust should expire at the end of six years is directory, and not mandatory. The pleadings do not indicate whether or not all of the creditors had been satisfied, but they do disclose the fact that some of the property, at least, had not been sold. Undoubtedly it was the intention of the corporation in creating the trust that

the property should be sold and the surplus, if any, after paying the debts, should be distributed to the stockholders. It was not the intention that at the end of six years the title to the real property should vest in the remaining unpaid creditors and the stockholders. Such a procedure would result only in confusion.

From the facts disclosed by the pleadings, we hold that the trustee has legal capacity to maintain this suit. The second ground of the demurrer, i. e., that the amended complaint does not state facts sufficient to constitute a cause of suit, is not urged by the respondent except as it applies to the question of the termination of the trust, a matter which we have already determined.

The decree of the circuit court is reversed and the cause remanded to the circuit court with instructions to overrule the demurrer and permit the defendant to plead further; neither party to recover costs on this appeal.

RAND, C. J., BEAN and CAMPBELL, JJ., concur.