A. G. HULL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48693. Promulgated October 10, 1935.

*L. A. Luce, Esq.*, and *Tom F. Carey, C. P. A.*, for the petitioner.
*R. P. Hertzog, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The petitioner urges first that the $100,000 which he received under the option contract of December 31, 1925, was actually received by him not in 1926 as the respondent now argues, but in 1925, when he took possession of the four certificates of deposit and placed them in his safe deposit box. Failing this argument, the petitioner argues in the alternative that, if the $100,000 is held to have been received by him in 1926, it is nevertheless not within his gross income because it was part of the sale price of the Arizona claims which had cost him $109,000, thus representing no present profit. The respondent, in addition to his argument on the merits that the $100,000 was received in 1926 as the consideration for an option and not as sale price, argues further that the petitioner is estopped to urge that the amount was income in 1925; but in view of our disposition of the merits in respondent's favor, there is no occasion for considering this argument of estoppel.

Despite the petitioner's lengthy argument, the facts seem to us to lead very simply to the conclusion that the $100,000 was income received by him for the first time in 1926 as the consideration for an option. The contract by its terms provides unambiguously for an option and there is no room for its construction as a present sale.[1]

The care with which the corporation, acting by petitioner as its president, refrained in 1925 from making an outright payment to him and from endorsing the certificates of deposit, as their terms required, as a condition to receiving the cash, precludes the idea that such nonpayment was either inadvertent or without significance. If it was intended that Hull should be paid in 1925, such payment

---

[1] See *Rialto Mining Corporation*, 25 B. T. A. 980, 985, where it is said:

" * * * The option agreement is not in evidence, but Hull, president of the petitioner and owner of the claims, testified that he gave the petitioner an option to purchase at any time before November 15, 1927, and received therefor $100,000 in cash, with the understanding that the petitioner would pay him an additional amount of $200,000 as and when it exercised the option."

would have been easy to make without the use of certificates of deposit. The deliberate omission to make a simple payment can hardly be construed as evidence of an intention to make payment or as an actual payment.

Any doubt, however, as to the significance of the conduct of the corporation and the petitioner in 1925 is completely removed by the fact that the certificates of deposit were returned by petitioner to the corporation in 1926 and a corporation check to his order issued. Certainly if the corporation had regarded the certificates of deposit as his in 1925 and the payment of $100,000 thereby completed, there would have been no occasion for the payment in 1926.

In our opinion, the petitioner did not receive the $100,000 in 1925. It was received by him in 1926 as consideration for an option and not as sale price of a capital asset. It was within his ordinary income of 1926.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL, dissenting: I dissent from the majority view in this case. In my opinion, the $100,000 was received by the petitioner in 1925. In the instrument, whether it be called an option or a sale contract, receipt of consideration was acknowledged. The certificates of deposit were taken out of the bank by the petitioner and put in his personal safe deposit box. He had the sole possession thereof; all that remained for him to do was to endorse them, which he could have done at any moment. Where a man owns practically all the stock in a corporation, is its president and entirely in control of its management, as in this case, if his endorsement of the certificate is necessary to constitute the receipt thereof as income to him, such person can determine when and to what extent he receives income by merely endorsing certificates or a portion of them in different years. In my opinion, the law does not permit this. What he received was of value to him and represented a consideration payable to him, and it was so understood by all the officers of the corporation. Otherwise there was no consideration for the agreement. Had the petitioner come into court in 1925 to set the agreement aside for lack of consideration, undoubtedly the court would have held that the consideration had been duly paid and received by him. It is not necessary to rely upon the doctrine of constructive receipt, but even on that theory I think to all intents and purposes the consideration, the equivalent of cash, was received in 1925.

It is not necessary for the majority opinion to discuss the question of estoppel, taking the view that the consideration was received in 1926; however, it does become necessary to discuss it if it was

received in 1925. I do not believe that this doctrine applies in this case. The transaction involving receipt of this money was subject to investigation by the Bureau of Internal Revenue long prior to the expiration of the statute of limitations for 1925. However, based on that investigation, the Commissioner determined that the amount was received in 1926. The petitioner at no time represented that the money was received in 1926. The record does not disclose that any misrepresentation of fact was made. The amount was not reported in 1925 by the petitioner, on the theory that the transaction was a sale and that no taxable income was received in that year. The position of the petitioner is not inconsistent with his position throughout. The taxpayer contended that it was not income at all and has always so contended, but says that if it was income it was income in 1925. All the facts appear to have been as fully before the Bureau of Internal Revenue before the statute of limitations expired in 1925 as they are at the present time and, in my opinion, the rule of estoppel does not apply.

McMahon agrees with this dissent.