## HULL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4077.

Circuit Court of Appeals, Fourth Circuit.

Jan. 5, 1937.

Llewellyn A. Luce, of Washington, D. C., for petitioner.

Robert N. Anderson, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., 'and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition for a review of a decision of the United States Board of Tax · Appeals, which decision gave judgment for the respondent, for income taxes for the year 1926, against the petitioner, in the sum of $21,802. There was a minority opinion of the Board. The decision of the Board was entered on November 21, 1935, and is reported in 33 B.T.A. 178. The judgment was given under the provisions of the Revenue Act of 1926, c. 27, 44 Stat. 9.

The petitioner, A. G. Hull, in 1925 owned 960 out of 1,000 issued shares of the Rialto Mining Company, of which he was president and a director. He owned mining claims in Arizona, which he had acquired in 1914 at a cost of about $109,-000, and also owned mining leases in Oklahoma. Under date of December 31, 1925, he entered into an option agreement with the company, which provided:

"That for and in consideration of the sum of One Hundred Thousand Dollars ($100,000.00) cash in hand, the receipt whereof is hereby acknowledged to have been paid to the undersigned, A. G. Hull, by the Rialto Mining Company, the undersigned does hereby grant, bargain and sell to Rialto Mining Company, its successors and assigns, the exclusive right and option for the term and period beginning this date and expiring November 15, 1927, to purchase the following described United States government mineral claims, * * * in the State of Arizona, * * * for the sum and price of Two Hundred Thousand Dollars ($200,000.00), payable in cash, and in further consideration of the price of this option, the undersigned, A. G. Hull, does hereby agree and bind himself, his heirs and personal representatives, that for and during the term of this option that he will do or cause to be done at the direction and upon the request of the owner of this option, such prospecting and development work as may be deemed necessary by the owner of this option, upon condition that all sums of money expended * * * be repaid. * * *"

On December 14, 1925, in anticipation of acceptance of this contract, the company, by petitioner, drew a nonnegotiable cash counter check for $100,000 on the First National Bank of Kansas City, Mo., and on the same date the bank issued therefor four $25,000 certificates of deposit,

payable to the order of the company on return of the certificates properly indorsed. Petitioner placed these certificates in his personal safe deposit box in Kansas City, where they remained until January 28, 1926. No entry was made on the company's books reflecting the issue of the certificates. Early in January, 1926, the company was converted into a Delaware corporation known as the Rialto Mining Corporation.

On January 28, 1926, the petitioner, having bought a lease for which he required funds, turned the deposit certificates over to the Rialto Mining Corporation, and on the same date the corporation issued its check for $100,000 payable to him. He cashed the check and kept the money.

The corporation has since been, and still is, prospecting on the claims covered by the option, but has never exercised its right to purchase, and no part of the $200,-000 referred to in the option has ever been paid to the petitioner.

In his income tax returns for 1925 and 1926 petitioner did not report as income the $100,000 or any part thereof received pursuant to the option agreement of December 31, 1925. The petitioner kept his records and made returns of income on the basis of cash receipts and disbursements.

Respondent, the Commissioner of Internal Revenue, first determined a deficiency of $23,848.23 in petitioner's income tax for 1926. In his determination of gross income, he included $190,785.86 as profit from the sale of mining claims. This, he conceded before the Board, was erroneous.

Before the Board the petitioner contended that the $100,000 which he received under the option contract of December 31, 1925, was received by him not in 1926 but in 1925, when he placed the four certificates of deposit in his safe deposit box, and, in the alternative, that if the $100,000 is held to have been received by him in 1926, it nevertheless should not be included in his gross income for that year because it was part of the sale price of the Arizona claims which had cost him $109,000, thus representing no present profit. On the other hand, the respondent, in addition to his contention that the $100,-000 was received by the petitioner in 1926 as the consideration for an option and not as a part of the sale price of the min-

ing claims, asserted further that the petitioner is estopped to urge that the amount was income in 1925. The Board sustained the Commissioner's principal contention, and therefore did not find it necessary to pass upon the matter of estoppel.

There is no dispute as to the facts, and the sole question presented is whether the sum of $100,000 received by the petitioner was taxable income for the year 1926.

■ When the matter came before the Board of Tax Appeals, the respondent filed an amended answer setting up new and different grounds for the determination of a deficiency against the taxpayer from those set out in the original notice of deficiency. As provided by rule 30 of the Rules of Practice of the United States Board of Tax Appeals, under these circumstances, the burden of proof rests upon the Commissioner to prove his contention. The formal notices of deficiency contained in the letters of the Commissioner were abandoned and the burden thereafter rested upon him to establish the allegations of his amended answer. Tex-Penn Oil Company v. Commissioner (C.C.A.) 83 F.(2d) 518. See, also, Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

■ Under the admitted facts, the taxpayer received on December 14, 1925, the equivalent of a cash payment for the quoted option. We find ourselves in accord with Member Trammell, the member who heard the case, when he says in his dissenting opinion: "In my opinion, the $100,-000 was received by the petitioner in 1925. In the instrument whether it be called an option or a sale contract, receipt of consideration was acknowledged. The certificates of deposit were taken out of the bank by the petitioner and put in his personal safe deposit box. He had the sole possession thereof; all that remained for him to do was to endorse them, which he could have done at any moment. Where a man owns practically all the stock in a corporation, is its president and entirely in control of its management, as in this case, if his endorsement of the certificate is necessary to constitute the receipt thereof as income to him, such person can determine when and to what extent he receives income by merely endorsing certificates or a portion of them in different years. In my opinion, the law does not permit this. What he received was of value to him and represented a consideration payable to him,

262

and it was so, understood by all the officers of the corporation. Otherwise there was no consideration for the agreement."

The payment of the sum in question being made in the year 1925, the income could be properly allocated to him in that year only. Commissioner v. R. J. Darnell, Inc. (C.C.A.) 60 F.(2d) 82.

Here the member who heard the case dissented from the finding of a majority of the Board that the payment was actually made in the year 1926, and one other member of the Board joined in the dissent.

■ The contention that the petitioner not having returned the payment as taxable income for the year 1925, is estopped from contending that the payment was taxable, if at all, in that year, is not a sound one.

As was pointed out in the dissenting opinion, the whole transaction was investigated by the Bureau of Internal Revenue long prior to the expiration of the statute of limitations for the year 1925. The petitioner at no time represented that the money was received by him in the year 1926, but consistently contended that the sum was not taxable at all, as he had made no profit on the transaction, having invested more than the payment received in the properties optioned. In view of our conclusion that the payment was made in 1925, it is not necessary to decide here whether this contention of the taxpayer was correct.

There is nothing inconsistent in the position of the petitioner and, so far as the record discloses, no misrepresentation of fact was made. All the facts were fully before the Bureau of Internal Revenue before the statute of limitations expired.

■ Estoppel is an affirmative defense, and the burden is upon the party asserting it to establish both the facts necessary to support it and the fairness of its application, and a party either knowing the facts, or in a position to know them, cannot claim the benefit of estoppel. Helvering v. Brooklyn City R. Co. (C.C.A.) 72 F. (2d) 274; Jones on Evidence (3d Ed.) Par. 279.

The payment was received by the taxpayer in the year 1925 and he is not estopped from setting up this fact. The sum of $100,000 received by the petitioner was not taxable income for the year 1926.

The judgment of the Board is reversed.