HUTCHINSON *v.* FARMER ET AL.

[No. 144, October Term, 1947.]

412

*Decided April 23, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*W. A. C. Hughes, Jr.,* for the appellant.

*Alfred Bagby, Jr.,* and *George Ross Veazey* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court No. 2 of Baltimore City, overruling a demurrer filed by the appellant to a bill of complaint. The appellant claims

414

that the demurrer should have been sustained, and the bill dismissed.

The bill shows that in 1931 a certain Annie Washington owned and occupied the leasehold property known as 1231 Myrtle Avenue in Baltimore City. On February 21, 1931, by assignment duly executed and recorded, she conveyed it to Howard C. Bregel, who, on the same day, by an assignment also duly executed and recorded, reconveyed it to her "for and during the term of her natural life with full power in the meantime however to grant sell lease mortgage or in any other manner dispose of the absolute estate therein without the consent of (or) joinder of any one and from and immediately after her death in the event that the aforesaid powers are not exercised so much thereof as remains undisposed unto Elizabeth Hutchinson and George W. Brice as joint tenants and not as tenants in common her his or their personal respresentatives and assigns". There is no conflict between the granting clause and the habendum. The latter reads as follows: "To Have and to Hold the said described lot of ground and premises unto and to the use of the said Annie Washington for life with full power of disposition as hereinbefore recited with remainder if any over to Elizabeth Hutchinson and George W. Brice as joint tenants and not as tenants in common his her or their personal representatives and assigns for all the residue of the term, etc." One of the joint tenants named in this deed, George W.. Brice, predeceased Annie Washington. The latter made a will under date of September 25, 1943, which at her death was admitted to probate by the Orphans Court of Baltimore City and duly recorded. By this will she appointed Roy S. Bond her executor and directed him to sell all of her property "consisting of my house—1231 Myrtle Avenue, Baltimore, Maryland—my jewelry, my furniture, etc." The executor is then directed to pay her funeral expenses, to pay $300 which the testatrix stated she owed her niece, a certain Mary C. Moore, and all other bills. One-half of the remaining

amount in the bank as a result of the sale of the property is given to James and Louise Farmer who she states are tenants in her home, and the remaining one-half she gives to her niece, above mentioned, Mary C. Moore. During her lifetime the testatrix made no disposition of the Myrtle Avenue property.

The executor qualified and returned an inventory of chattels in the amount of $67.50. He did not include the Myrtle Avenue property. Mary C. Moore filed a petition in the Orphans Court to require the executor to return an inventory of this property and, after an answer and hearing, that Court granted the prayer of the petition. Elizabeth Hutchinson, who was also a niece of the testatrix, was not a party to that proceeding. The executor returned an inventory of the leasehold property and under an order of the Orphans Court, sold it at public auction for $4,310. That sale, however, was never ratified because the purchaser was not satisfied that the executor could convey a good title to the property. The bill of complaint was filed by James Farmer and Mary C. Moore, and, after reciting the above facts, asked for a declaration of the rights of the parties, for a sale of the leasehold property and the appointment of a trustee therefor, that the executor be required to account for the monies which he has been collecting from the property, that the Court assume jurisdiction over the final settlement of the Annie Washington estate, and for further relief. The appellant, Elizabeth Hutchinson, one of the defendants, was served by publication, and a decree pro confesso was entered against her. When she subsequently learned of the situation, she petitioned the Court to strike out that decree. This the Court did, she demurred to the bill, the Court overruled the demurrer, and then this appeal was taken.

There were some other proceedings from which, however, no appeal was taken, and the record does not show them, except in the docket entries. The chancellor is said in the briefs to have appointed a trustee to sell the

property, and that trustee is said to have made a sale, which was reported and ratified. Some testimony appears to have been taken. Counsel for the parties are said to have filed a stipulation on behalf of their respective clients agreeing that their rights should be relegated to the funds in the trustee's hands. No sale, however, has been consummated because, if the appellant's contention is correct, there was no right in the court to order a sale. Whether these other proceedings were within the power of the chancellor, under the circumstances, and when they were had, is a question not before us on this record. The only question we are asked to decide is, did this property pass under the remainder in the deed, or did it pass under the will. The answer to this question depends upon the construction of the power given in the deed.

This power does not specify the instruments or the conveyances by which it is to be exercised. It does not use the nouns "deed", "assignment", "lease", or "mortgage" although there is no difficulty in holding that power to grant or sell leasehold property is intended to comprehend the execution of a deed or assignment. Similarly, the power to lease grants the power to execute a lease, and the power to mortgage to execute a mortgage. All of these conveyances would have to be made "in the meantime" which, as used in the clause granting the power, obviously means "during the term of her natural life". A will would also have to be made during the lifetime of the donee of the power, but, unlike the conveyances mentioned, it would not take effect when made, but only at her death. It is claimed that the words "or in any other manner" give the right to dispose of the remainder by will, that there is no other manner of disposal left but by will, if the donee does not grant, sell, lease or mortgage, and that the additional comprehensive words were inserted to authorize transfer by will.

On the other hand, it is contended that general words such as these must be considered with reference to the

specific powers previously granted, and must be interpreted to give only general powers of the same nature and kind. And it is said that a power to will is materially different from a power to grant, sell, lease or mortgage, not only in the time it can become effective, but because it affects only the remainder, and not the present enjoyment of the life estate.

Powers are to be construed liberally in order to ascertain the intention of the donor. *4 Kent Commentaries,* 345; *Dodson v. Ashley,* 101 Md. 513, at page 517, 61 A. 299; *Schmidt v. Hinkley,* 115 Md. 330, at page 335, 80 A. 971; *Miller on Construction of Wills,* paragraph 249. In the case before us, of course, the donee is practically the donor as she created the power by simultaneous conveyances to and from her attorney, so that what we have to consider is what she had in mind when she changed her absolute estate to a life estate coupled with the power to dispose of the entire estate, and with a remainder to the appellant if such disposition was not made. When the method of the execution of the power is set out in the instrument creating it, that method of execution must be used, and another will not suffice. *Miller on Construction of Wills,* paragraph 250; *Tiffany on Real Property,* 3d Ed., Vol. 3, Sec. 398; *Venable's Syllabus,* page 167. Thus, if the instrument creating the power requires that it be executed by deed, it cannot be executed by will. The converse is also true. *Pope v. Safe Deposit & Trust Co.,* 163 Md. 239, at page 245, 161 A. 404; *O'Hara v. O'Hara,* 185 Md. 321, 44 A. 2d 813, 163 *A. L. R.* 1444; *Connor v. O'Hara,* 188 Md. 527, 53 A. 2d 33. See also *Farmers' Loan and Trust Co. v. Mortimer,* (opinion by Judge Cardozo) 219 N. Y. 290, 114 N. E. 389, Ann. Cas. 1918E, 1159.

In the instant case, as we have shown, no specific form of instrument is named as the method to be used in executing the power, and we have to determine from the words used whether or not this power is intended to be exercised only by conveyances inter vivos. The appellees

cite the very early case of *Corporation of Roman Catholic Clergymen's Lessee v. Hammond,* 1 Har. & J. 580, 581, as authority for the proposition that the will of the testatrix is a valid execution of the power. In that case a certain Thorold devised a tract of land to a certain Molyneux, to him and his heirs forever, but in case of his death before the devisors or his not having disposed of it before his death, either in whole or in part, the estate of the part remaining undisposed, was to go to a certain Guin. Molyneux made a will devising his estate to Hunter, and by mesne conveyances it vested in the Corporation of the Roman Catholic Church. The question involved in that case was whether the Thorold tract passed by these conveyances, or whether it went to Guin and then through his conveyance to Hammond. The case was heard in the General Court. The court was divided. Chief Judge Chase and Judge Sprigg held that the Molyneux will was not such a disposition of the estate as to convey the land to Hunter. Judge Done held the contrary. The case was appealed to the Court of Appeals, where it was argued by Messrs. Shaaff and Pinkney for the Corporation. The main argument was that Molyneux had a fee simple estate, but there was a supplemental argument that he had a tenancy for life coupled with a power. The Court of Appeals reversed the judgment of the General Court without opinion, and it is impossible to tell whether it was reversed on the theory that the estate was one in fee simple, or on the other theory, that it was a life estate coupled with a power of disposition. The case seems never to have been cited in Maryland, the reason probably being that it is difficult to understand what was decided.

It is not necessary to discuss such cases as *Russell v. Werntz,* 88 Md. 210, 44 A. 219, *In re Bauernschmidt's Estate,* 97 Md. 35, 54 A. 637, and *Bachtell v. Bachtell,* 135 Md. 474, 109 A. 198, where the power of disposition was held by the court to apply only to the life estate and not to the remainder. The deed in the case before us, in

specific terms, gives the donee the right to dispose of the entire estate. On this question the case is similar to *Beranek v. Caccimaici,* 157 Md. 144, 145 A. 369. In the case of *Harman v. Hurst,* 160 Md. 96, 153 A. 24, cited by the appellees, a father conveyed his property to his daughter with a reservation in him of a power to sell. He later conveyed it to another, and had it conveyed back to him in fee. By his will, he left his son a residuary legatee, and the question was whether this son became entitled to the property under the will, or whether it belonged to the daughter under the deed. The court considered the question whether the transfer to an intermediary and back to the grantor constituted a valid exercise of the power of sale reserved, and said it was of prime importance that the father himself was the beneficiary of the power. He was to receive the proceeds of any mortgage or sale. The court found no reason why the father could not exercise his reserved power by transferring the title to his attorney and back to himself, and held that these transfers constituted a valid exercise of the power of sale. This case is distinguishable on the facts from the case before us. It is concerned only with the exercise of the reserved power by a sale, and whether this method of inter vivos transfer was authorized. It has no bearing on the question we have to consider.

The case of *Hammond v. Hammond,* 159 Md. 563, 152 A. 107, 84 *A. L. R.* 1050, treats a situation similar to the one before us, except that the granting clause in the reconveying deed purported to convey a fee simple title, while the habendum defined the re-granted estate as being vested in the grantee for life only with power of disposition by sale, lease or mortgage, and with remainder to three of grantee's children, if the reserved power were not exercised. The donee subsequntly made a will creating a trust estate. The only question which seems to have been argued by the late Charles McHenry Howard, attorney for the appellees, and decided by the Court, was whether the donee had a fee simple estate, or whether

420

the habendum controlled, and left him with a life estate only, with a power of disposition and a remainder over. The court, speaking through Judge Urner, said that unless the habendum was given effect, the execution of the deeds was wholly futile, and that the habendum could not be ignored. The decision was that the remaindermen took, and the property did not pass under the will. No point seems to have been made that the power of disposition could have been exercised by the will. If the Court had thought that the will was a valid method of executing the power, the decision must necessarily have been the other way.

In the case of *Trustees Presbyterian Church v. Nize*, 181 Ky. 567, 205 S. W. 674, 675, 2 *A. L. R.* 1237, the court had before it a provision in the will by which a testatrix gave the residue of her estate to her husband "to have and to enjoy same during his natural life and at his death should there be any thing left, it is my wish that it shall go to the Presbyterian Church". The court held that it was a necessary implication that the life tenant could diminish the estate during his enjoyment of it, but that portion of it which had not been disposed of at the time of his death, went to the remaindermen. That case is the subject of an exhaustive annotation in 2 *A. L. R.*, and beginning on page 1319 there is a citation of authorities for the doctrine that where a life estate is given with a power of sale or disposition and an express remainder over of "what remains" or some equivalent phrase, the life tenant may dispose of the whole or any part of the principal during his lifetime, but cannot dispose of the property by will or by a deed operating as a testamentary disposition. The cases cited support this statement, although they differ in their facts. These include decisions from England, Massachusetts, New Jersey Equity, Pennsylvania, New York, Illinois, Indiana, Ohio and other states. It will serve no good purpose to discuss these cases at length, but we think the principle is one applicable to the case at bar. Here the remainder

is of such of the property "as remains undisposed of", or as stated in the habendum "if any". These words indicate an intention that any disposal of the property by the life tenant was to be made for her own benefit or purposes in her lifetime. They negative an intention that she could destroy the remainder given in the deed by a testamentary disposition.

Some cases hold that the words "dispose of" are broad enough to include a disposition by will. One such case, relied on by the appellees, is *Burbank v. Sweeney,* 161 Mass. 490, 37 N. E. 669. In that case a testator gave his entire estate to his wife for life, then gave several specific remainders, which did not exhaust the estate, and finally left the balance of his estate to his wife "to dispose of as she may deem expedient, but in the event that she should make no disposition of the same during her lifetime, I give the remainder of my estate, not disposed of as above, to my heirs at law." The court held that by the use of the words "not disposed of as above," the testator did not refer to a disposition to be made by his wife under the power, but to the three specific remainders made by himself in the two prior items of the will. The court also said that as there was nothing to indicate that the testator was induced to give the power by the expectation that its execution would be necessary for his wife's support and maintenance, the many cases in which a power, evidently given for that purpose is held to exclude the power to dipose by will, were not in point. The conclusion was that the will authorized her to dispose of the property by her will. It is significant, that the power in that case did not specify any method of disposition (grant, sell etc.) such as we have in the deed before us.

Another similar case, cited by the appellees, is *Sherill v. Ouerbacker,* 182 Ky. 626, 206 S. W. 876, 877. In that case the testator left his wife his entire property "with full power to use, hold, employ and dispose of * * *as to her may seem right and proper". In a subsequent clause it was provided that after the death of his wife, his

daughter should take her mother's place in the will. There was also a provision that after the death of the daughter the estate should be closed, a home bought for a granddaughter, and the balance of the estate held in trust for this same granddaughter. The wife predeceased the testator. The granddaughter died before the daughter, and the daughter left a will giving her entire estate to another child. The question was whether the original estate passed under this will. The Court held that where a power "to dispose of" is not coupled with such words as sell, or other similar specific methods of disposition, then a power to will is given, and came to the conclusion that the daughter had an unlimited power of disposition, and her will passed title to the property. In the discussion, a number of authorities from Kentucky and elsewhere were analyzed and distinguished. In a number of these cases where the words "dispose of" were qualified by the naming of methods, which did not specifically include ·testamentary disposition, it was held that the power to will was not given. In others where the words "dispose of" were not qualified and no modes of exercising the power were mentioned, the courts held that the words were sufficiently comprehensive to include every possible mode of disposition, including the power to will. This appears to have been a general distinction made, although the cases differed so in the wording of the powers construed that no definite rule could be established. The cases all turned upon what the courts found to be the intention of the grantor of the power.

The donee in the case before us had an intention which, as in the Hammond case, we cannot disregard, to give the remainder of her property to her niece, the appellant. She reserved, for her own use, power to dispose of it, but unlike the grantor in *Harman v. Hurst, supra,* she did not execute that power in the manner in which she was specifically authorized. For some reason, which does not appear in the record, she experienced a change of heart, and attempted to alter the direction in which the

remainder of her property should go, giving it by her will to another niece and two tenants and friends living in her home. That she might want to do this does not seem to have been in her mind, when the deeds were exchanged. It would have been quite easy, if such a reservation had been desired, to insert in the deed to her a provision that she could dispose of the property by will. In the absence of some such specific reservation we cannot interpret the general words "in any other manner" to authorize a disposition so different from the other methods set out. The specific powers given authorized the exercise of the authority over her property which a prudent person would want to retain, even though she eventually intended that property to go to the appellant and the other joint tenant. The power was not granted or reserved to change the ultimate disposition except as the result of the execution of some instrument to take effect in the lifetime of the donee.

In the absence of any valid exercise of the power, the title remains in the appellant after the death of the testatrix. Her demurrer to the bill of complaint should have been sustained, and the bill dismissed, as the latter was brought upon an entirely different theory, and we find that the complainants have no interest in the property.

*Order reversed and bill dismissed, with costs to the appellant.*