T.C. Memo. 2004-112


UNITED STATES TAX COURT


ESTATE OF ROSE B. POSNER, DECEASED, DAVID B. POSNER,
PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12780-01.            Filed May 10, 2004.


<u>Mark T. Willen</u> and <u>Peter E. Keith</u>, for petitioner.

<u>C. Teddy Li</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


THORNTON, <u>Judge</u>:  Respondent determined a $1,114,795 Federal
estate tax deficiency with respect to the Estate of Rose B.
Posner (the estate).  The parties have resolved all issues raised
in the notice of deficiency.  The estate contends, however, that
it is entitled to a $2,909,000 estate tax refund because certain
marital trust property was erroneously included in the gross

estate.  Resolution of this issue turns upon these two subissues: (1) Whether Rose B. Posner (decedent) possessed a general power of appointment over the marital trust property in question under section 2041; and (2) whether the duty of consistency requires the estate to treat decedent as possessing a general power of appointment under section 2041.[1]  Finally, if we determine that the estate is entitled to a refund of an estate tax overpayment, we must decide whether this Court has jurisdiction at this juncture to award interest on the overpayment.

FINDINGS OF FACT

The parties have stipulated most of the facts, which we incorporate along with the associated exhibits into our findings of fact.  On October 28, 1996, decedent died in Baltimore County, Maryland.  When the petition was filed, David B. Posner (David), the personal representative of the estate, resided in Reisterstown, Maryland.

Mr. Posner's Will

Decedent was formerly married to Nathan Posner (Mr. Posner).  On April 21, 1975, Mr. Posner died.  He was survived by decedent and their three children, David, Judith Geduldig, and Carol Jean Posner Gordon.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Mr. Posner's will devised half of his estate to a marital trust (the marital trust) for decedent's benefit. Item II of Mr. Posner's will created the marital trust, and item XIV set forth provisions for its administration. Specifically, item II of Mr. Posner's will provided:

> If my wife, Rose B. Posner, shall survive me, I give, devise and bequeath to my Trustees, hereinafter named, in trust and confidence, nevertheless, for the uses and purposes hereinafter set forth, an amount equal to one-half (½) of the value of my adjusted gross estate as finally determined for federal estate tax purposes, less an amount equal to the value of all property which passes or has passed to my said wife either under other provisions of this Will, or outside of this Will and which qualifies for the marital deduction allowable for federal estate tax purposes; provided, however, no assets shall be made a part of this trust estate which do not qualify for said marital deduction. This trust estate shall be administered by my Trustees as a separate trust. * * *

Item XIV of Mr. Posner's will provided:

> Anything in this Will to the contrary notwithstanding, and whether or not any reference is made in any other provision of this Will to the limitations imposed by this Section XIV, my Trustee shall not have or exercise any authority, power or discretion over the Marital Trust or the income thereof, or the property constituting the same, nor shall any payment or distribution by my Trustee be limited or restricted by any provision of this Will, which would in any way (a) adversely affect the qualification of the Marital Trust, (b) prevent my estate from receiving the benefit of the maximum marital deduction, or (c) affect the right of my said wife to all income therefrom or her right to dispose of the principal and income thereof in the amount and to the extent necessary to qualify the Marital Trust for the marital deduction for Federal estate tax purposes under the provisions of the law applicable to my estate.

The parties have stipulated that Mr. Posner's will included none of the substantive dispositions, such as for income beneficiaries, remaindermen, and powers of appointment, normally found in a document establishing a testamentary trust.

In 1976, Mr. Posner's estate filed a Federal estate tax return, attaching thereto a copy of Mr. Posner's will. On that return, Mr. Posner's estate claimed a marital deduction with respect to the marital trust property. Respondent audited this estate tax return and allowed the claimed marital deduction.

Decedent's Will

Before her death, decedent and her two daughters (the daughters) had a falling out. In her will, dated January 3, 1996, decedent effectively disinherited the daughters, leaving most of her estate to her son David, his family, and three charities.[2] In her will, decedent directed the marital trust property, valued at approximately $5 million, to be paid into a revocable trust (the revocable trust). To one daughter decedent left $100; to the other daughter she left only a photograph. The daughters unsuccessfully challenged the will's validity.[3]

---

[2] After her death, decedent's son, David B. Posner (David) was appointed personal representative of her estate. David was not a personal representative of Mr. Posner's estate.

[3] In the Circuit Court for Baltimore County, Md. (Baltimore County circuit court), the daughters attempted to have decedent's will and revocable trust declared invalid, alleging fraud, undue influence, and tortious interference by their brother, David.

(continued...)

Power of Appointment Case

While the daughters' challenge to the validity of decedent's will was ongoing, decedent's children disputed ownership of the marital trust property. The daughters contended that decedent had possessed no power of appointment over the marital trust property and that, therefore, the property should revert to Mr. Posner's estate to be distributed equally to the three children pursuant to the residuary clause in Mr. Posner's will. David, as decedent's personal representative and trustee of decedent's revocable trust, contended that decedent possessed and exercised a general power of appointment over the marital trust property and, therefore, the property should be distributed to the various charitable organizations and other beneficiaries named in decedent's revocable trust instrument.

Seeking to resolve this matter, the trustee of Mr. Posner's estate filed a complaint for declaratory judgment in the Circuit Court for Baltimore County, Maryland (Baltimore County circuit court), naming decedent's three children as defendants. On August 11, 1997, the Baltimore County circuit court granted

---

[3](...continued)
The Baltimore County circuit court granted summary judgment against the daughters. On appeal, the Maryland Court of Special Appeals (court of special appeals) found a triable issue of fact and remanded the case for a jury trial. See Geduldig v. Posner, 743 A.2d 247 (Md. Ct. Spec. App. 1999). On remand, the jury found in favor of David and decedent's estate on all counts, upholding the validity of decedent's will and rejecting the daughters' claims.

summary judgment for the daughters, ruling that the marital trust

property was not part of decedent's estate but instead reverted

to Mr. Posner's estate:

> The Court finds as a matter of law that, when Mr. Posner's Will is read in its entirety, Item XIV grants Mrs. Posner power over the Marital Trust. However, this power is limited to inter vivos because ambiguous granting language must be construed only as broadly as is necessary to fulfill the testator's intent. See Hutchinson v. Farmer, 190 Md. 411 [58 A.2d 638] (1948). Furthermore, the fact that the IRS approved the marital deduction did not establish that Mrs. Posner's powers were greater than inter vivos because the Trust would have qualified for the deduction if Mrs. Posner had either inter vivos or testamentary power.

> As Mrs. Posner's powers over the Marital Trust were limited to inter vivos, her attempt to fund the Revocable Trust with assets from the Marital Trust fails. The Revocable Trust, by its terms, is not an exercise of inter vivos power because it could not vest until Mrs. Posner's death. Accordingly, Mrs. Posner's Revocable Trust was an attempt to exercise a testamentary power that she did not possess.

> The Court concludes that the assets from the Marital Trust therefore revert to Mr. Posner's estate to be distributed according to the residuary clause in his Will. [McDonagh v. Geduldig, No. C-97-001002 (Baltimore County Cir. Ct. Aug. 11, 1997).]

The Maryland Court of Special Appeals (court of special

appeals) affirmed the Baltimore County circuit court's ruling

that Mr. Posner's will granted decedent no testamentary power of

appointment. Posner v. McDonagh, No. 3C971002 (Md. Ct. Spec.

App. Mar. 11, 1997). The court of special appeals was

unpersuaded that references in Mr. Posner's will to the Federal

estate tax marital deduction evinced his intention to grant

decedent a testamentary power of appointment:

> The statements in Item XIV of Nathan Posner's will are very general; they simply demonstrate that he wanted to qualify the marital trust for the marital deduction.  In light of the broadness of these pronouncements, and in light of the fact that a marital trust will qualify for the marital deduction if the surviving spouse is given either an inter vivos power of appointment or a testamentary power of appointment, it is not at all clear that the statements in Item XIV of Nathan Posner's will evince an intent to grant Rose Posner a testamentary power of disposition over the marital trust's assets.  Given the generality of the statements, it is almost as easy to conclude that Nathan Posner intended to grant Rose Posner a solely inter vivos power of appointment as it is to conclude that he intended to grant her a testamentary power of appointment.  Thus, the language in Item XIV of the will does not provide conclusive proof of Nathan Posner's intent with respect to Rose Posner's power of appointment over the marital trust's assets.

Furthermore, the court of special appeals stated that under

applicable Maryland caselaw, the language in Mr. Posner's will

"is insufficient to grant Rose Posner either an inter vivos or a

testamentary power of appointment over the marital trust's

assets."  Id.[4]  The court of special appeals stated its holding

as follows:  "Accordingly, we hold that Nathan Posner's will did

not grant Rose Posner a testamentary power of appointment over

the assets of the marital trust."  Id.

---

[4] In a subsequent case involving tax apportionment issues relating to the marital trust property, see infra note 5, the court of special appeals characterized this statement as dicta. Gordon v. Posner, 790 A.2d 675, 679 (Md. Ct. Spec. App. 2002).

By order dated June 30, 1999, the Maryland Court of Appeals, Maryland's highest court, declined to hear the appeal of the court of special appeals' decision.

The Estate's Federal Estate Tax Return

While the above-described litigation was pending, David, as personal representative of decedent's estate, filed a request for an extension of time to file the estate's Federal estate tax return and remitted estate tax of $6.5 million. On July 30, 1998, notwithstanding the uncertainty of the outcome of the State court litigation, David filed the estate's Federal estate tax return, wherein the marital trust property was included in decedent's gross estate.[5]

On July 12, 2000, the estate filed a claim for an estate tax refund of $2,909,000, on the ground that the litigation in the Maryland State courts had proved the inclusion of the marital

---

[5] These actions triggered more litigation. In July 1999, the daughters filed a complaint in the Circuit Court for Baltimore City, Md. (Baltimore City circuit court), against David and the trustee of the marital trust. They sought declaratory relief, asking the court to rule that David was not entitled to claim any contribution from the marital trust for the estate taxes he had paid. On cross-motions for summary judgment, the Baltimore City circuit court held that decedent's three children had to bear responsibility for the estate taxes paid on the marital trust assets and that any future IRS refund of these taxes should be distributed equally among decedent's three children. Gordon v. Posner, No. 24-C-99-03489 (Baltimore City Cir. Ct. Oct. 24, 2000). The court of special appeals affirmed this decision. Gordon v. Posner, 790 A.2d at 675. By order dated Jan. 31, 2002, the Maryland Court of Appeals declined to hear the appeal of the court of special appeals' decision.

trust property in decedent's gross estate (as reported on the estate's estate tax return) to have been in error.  On July 10, 2001, respondent issued a notice of deficiency disallowing the refund claim.[6]

## OPINION

I.   <u>Introduction</u>

Section 2001 imposes an estate tax determined, in part, by the value of the taxable estate.  Sec. 2001(b).  The taxable estate is defined as the gross estate less deductions.  Sec. 2051.  The gross estate generally includes the value of any property with respect to which the decedent has a general power of appointment at the time of his or her death.  Sec. 2041(a)(2).  With exceptions inapplicable here, a general power of appointment is defined as a power that is exercisable in favor of the decedent, the decedent's estate, the decedent's creditors, or the creditors of the decedent's estate.  Sec. 2041(b)(1).

A power to make an inter vivos appointment of property is a general power of appointment if it is exercisable in favor of the decedent or the decedent's creditors, regardless of whether the power is also exercisable in favor of the decedent's estate or the creditors of the decedent's estate.  <u>Jenkins v. United</u>

---

[6] Respondent made a number of adjustments to the estate's estate tax return and determined an estate tax deficiency.  The parties have resolved all issues except respondent's disallowance of the claimed refund.

States, 428 F.2d 538, 544-545 (5th Cir. 1970); Estate of Edelman v. Commissioner, 38 T.C. 972, 976-977 (1962); see also Martin v. United States, 780 F.2d 1147, 1148 n.1 (4th Cir. 1986); Condon Natl. Bank v. United States, 349 F. Supp. 755, 759-760 (D. Kan. 1972); sec. 20.2041-1(c), Estate Tax Regs.

II. Did Decedent Possess a General Power of Appointment Over the Marital Trust Property?

A. The Parties' Positions

As discussed below, the court of special appeals has ruled that Mr. Posner's will granted decedent no testamentary power of appointment over the marital trust property. Respondent does not dispute that ruling. Respondent contends, however, that Mr. Posner's will granted decedent an inter vivos general power of appointment over the marital trust property so as to make it includable in her gross estate pursuant to section 2041(a). The estate argues that under applicable Maryland law, as adjudicated by the court of special appeals, decedent possessed no power of appointment over the marital trust property. Accordingly, the estate contends, inclusion of the marital trust property in decedent's gross estate, as reported on the estate's estate tax return, was in error.

B. Decisions of the Maryland Courts

State law, which creates legal interests and rights in property, including powers of appointment, determines the nature, scope, and validity of such legal interests and rights. See

Morgan v. Commissioner, 309 U.S. 78, 80 (1940); Estate of Pierpont v. Commissioner, 336 F.2d 277, 281 (4th Cir. 1964), affg. T.C. Memo. 1962-286; Estate of Allen v. Commissioner, 29 T.C. 465, 467-468 (1957).  Federal law, in turn, determines the Federal taxation of such interests or rights.  Morgan v. Commissioner, supra.[7]

"[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law".  West v. Am. Tel. & Tel. Co., 311 U.S. 223, 236 (1940).  On the other hand, we are not necessarily bound to follow decisions of State intermediate appellate courts.  Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); Estate of Rapp v. Commissioner, 140 F.3d 1211, 1216 (9th Cir. 1998), affg. and remanding on another ground T.C. Memo. 1996-10; Estate of Harper v. Commissioner, 93 T.C. 368, 374 (1989); Estate of Pangas v. Commissioner, 52 T.C. 99, 101 (1969).  Instead, we give "proper regard" to decisions of State intermediate appellate courts if these decisions are on

---

[7] "If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."  Morgan v. Commissioner, 309 U.S. 78, 81 (1940).  To this same end, the term "power of appointment" includes all powers that are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations.  Sec. 20.2041-1(b)(1), Estate Tax Regs.; see also Martin v. United States, 780 F.2d 1147, 1148 (4th Cir. 1986).

point.  See Commissioner v. Estate of Bosch, supra; Estate of
Casey v. Commissioner, 948 F.2d 895, 898 (4th Cir. 1991), revg.
T.C. Memo. 1989-511; Ward v. Commissioner, 87 T.C. 78, 91-92
(1986); Estate of Fulmer v. Commissioner, 83 T.C. 302, 306
(1984).  Therefore, in deciding whether decedent possessed a
general power of appointment, relevant decisions of the Maryland
Court of Appeals are binding on this Court.  Decisions of the
court of special appeals, on the other hand, are not binding;
these decisions, if on point, are entitled to "proper regard".

In Posner v. McDonagh, No. 3C971002 (Md. Ct. Spec. App. Mar.
11, 1999), the court of special appeals held that decedent
possessed no testamentary power of appointment.  The estate
relies heavily on the statement in the court of special appeals'
unreported opinion that Mr. Posner's will was "insufficient to
grant Rose Posner either an inter vivos or a testamentary power
of appointment over the marital trust's assets." Id.  This
statement, however, is dicta; the only issue before the court of
special appeals was whether decedent possessed a testamentary
power of appointment.  Indeed, in a subsequent published opinion
involving the apportionment of taxes relating to the marital
trust property, the court of special appeals characterized its
prior statement as dicta:

> On appeal, this Court held that Rose did not have
> a testamentary power of appointment over the assets of
> the Marital Trust, and affirmed the trial court.  In
> dicta, we also stated that the language of Nathan's

will was "insufficient to grant Rose Posner either an inter vivos or a testamentary power of appointment . . . ." [Gordon v. Posner, 790 A.2d 675, 679 (Md. Ct. Spec. App. 2002); emphasis added.]

Consequently, although we give the decisions of the court of special appeals proper regard, those decisions do not squarely answer the question whether decedent possessed an inter vivos power of appointment over the marital trust property.

On reply brief, respondent argues that the only Maryland decision that is "legally effective" with respect to this question is the ruling of the Baltimore County circuit court, which held that decedent lacked a testamentary power of appointment over the marital trust property and stated in part: "when Mr. Posner's Will is read in its entirety, Item XIV grants Mrs. Posner power over the Marital Trust. However, this power is limited to inter vivos". McDonagh v. Geduldig, No. C-97-001002 (Baltimore County Cir. Ct. Aug. 11, 1997).

As a threshold matter, we note that the Baltimore County circuit court is a State trial court, not an intermediate State appellate court. Although decisions of a State trial court are given some weight and proper regard if on point, see Commissioner v. Estate of Bosch, supra at 465, we must carefully consider the nature of the trial court litigation, see Estate of Ahlstrom v. Commissioner, 52 T.C. 220, 229 (1969), and the subsequent proceedings on appeal.

In ruling that Mr. Posner's will gave decedent no testamentary power, the Baltimore County circuit court stated that item XIV of Mr. Posner's will was a granting clause that granted decedent only an inter vivos power of appointment.[8]  In its affirmance, the court of special appeals relied on the lack of specificity in Mr. Posner's will regarding the claimed testamentary power of appointment.  The court of special appeals did not endorse the circuit court's statement that item XIV was a granting clause that granted decedent an inter vivos power of appointment.

To the contrary, as previously discussed, in holding that Mr. Posner's will gave decedent no testamentary power of appointment, the court of special appeals stated in dicta that Mr. Posner's will was "insufficient to grant Rose Posner either an inter vivos or a testamentary power of appointment over the marital trust's assets." Posner v. McDonagh, supra.  In light of this statement, and considering the basis on which the court of special appeals affirmed the circuit court's ruling, we are reluctant to assign much weight to the Baltimore County circuit court's statement that Mr. Posner's will granted decedent an

---

[8] In the Baltimore County circuit court proceeding, the daughters argued that item XIV of Mr. Posner's will was only a saving clause and thus granted no powers.  In the alternative, the daughters argued that if item XIV was a granting clause, the clause granted only inter vivos, not testamentary, power.  The Baltimore County circuit court accepted this latter argument.

inter vivos power of appointment over the marital trust property. To the contrary, we believe that the Baltimore County circuit court's conclusions in this regard were effectively set aside by the court of special appeals. Cf. Hudson v. Commissioner, 100 T.C. 590, 594 (1993) (stating that for purposes of applying collateral estoppel, "where a trial court's conclusions of law or findings of fact are not passed on by the appellate court, the trial court's conclusions of law or findings of fact are effectively set aside").

Finding no other rulings of Maryland courts that are dispositive in determining whether Mr. Posner's will granted decedent an inter vivos general power of appointment, we must make our best effort to determine how Maryland's highest court would decide the issue. See Commissioner v. Estate of Bosch, 387 U.S. at 465; West v. Am. Tel. & Tel. Co., 311 U.S. at 237; Estate of Casey v. Commissioner, supra at 898.

C. Analysis

A threshold issue is whether Mr. Posner's will conferred upon decedent any sort of a power of appointment--testamentary or inter vivos, general or limited. The parties have stipulated that Mr. Posner's will "did not include any of the substantive dispositions, such as income beneficiaries, remaindermen, and powers of appointment, normally found in a document establishing a testamentary trust." (Emphasis added.) The holding of both

Maryland courts to adjudicate the issue was that Mr. Posner's will created <u>no</u> testamentary power of appointment.  Inasmuch as Mr. Posner's will contains no substantive provisions regarding powers of appointment of any sort, we are persuaded that Mr. Posner's will also failed to create an inter vivos power of appointment (as the court of special appeals stated in dicta).

Respondent argues that the failure of item II of Mr. Posner's will to provide substantive dispositions of income and principal is a "scrivener's error" and that items II and XIV of Mr. Posner's will, when read together, clearly establish his intent to create a trust and grant decedent "a right to all trust income, and a general power of appointment over the trust, such that the trust would qualify for the Federal estate tax marital deduction."  We are unpersuaded that the absence of substantive dispositions should be regarded as a mere scrivener's error. Rather, we believe that because of the lack of such dispositions, the will fails to confer on decedent a power of appointment with respect to the marital trust property.  We discern in Mr. Posner's will a directive that the marital trust property should qualify for the Federal estate tax marital deduction.  The will does not provide, however, the necessary terms for satisfying this directive.  Reading Mr. Posner's will as respondent suggests would be tantamount to rewriting Mr. Posner's will to include these provisions, which we are not at liberty to do.  See <u>Gaither</u>

v. Fidelity-Baltimore Natl. Bank & Trust Co., 115 A.2d 711 (Md. 1955).[9]

Items II and XIV of Mr. Posner's will refer to the Federal estate tax marital deduction.  On this basis, respondent argues that this case comes squarely within the rationale of Guiney v. United States, 425 F.2d 145 (4th Cir. 1970).  In Guiney v. United States, supra at 147, the testator used the words "general power of appointment" to describe the power given to his wife and referenced "the marital deduction as provided by the Internal Revenue Code of 1954".  The Court of Appeals for the Fourth Circuit found that this "unmistakably precise language" manifested "a clear and forthright desire to clothe his widow with the 'general power of appointment' necessary to accomplish the marital deduction and by express reference brought the power he created squarely within the Code's requirements."  Id. at 149. The Court of Appeals concluded:

> Thus, the widow here is given specific authorization to
> appoint to herself or her estate, as the testator

_____

[9] Moreover, we do not construe item XIV of Mr. Posner's will as a granting clause giving decedent a general power of appointment.  Instead, we agree with the statement of the court of special appeals in Gordon v. Posner, 790 A.2d at 678, that item XIV is more in the nature of a "marital deduction 'savings clause.'"  Cf. Estate of Fine v. Commissioner, 90 T.C. 1068 (1988) (holding that a will provision precluding the executor from taking any discretionary action that would diminish the marital deduction did not affect the means or order of distribution of the estate as set forth in other will provisions), affd. without published opinion 885 F.2d 879 (11th Cir. 1989).

obviously was not referring to a Maryland (limited) general power of appointment. By his use of the words "general power of appointment," coupled with his expressed "intention to take advantage of the marital deduction as provided by the Internal Revenue Code of 1954," the testator was clearly referring to the general power of appointment provisions of section 2041 of the Code, which empower the donee to appoint to herself or her estate. [Id. at 150.]

Unlike the will in Guiney, Mr. Posner's will contains no language referring to a "general power of appointment" and, indeed, contains no substantive dispositions of the marital trust property. Item II of Mr. Posner's will does not expressly provide for the disposition of income or principal of the marital trust, and it contains no direction regarding the distribution of principal upon termination of the trust. It refers only to the Federal estate tax marital deduction. Item XIV also refers to the marital deduction but contains no language that we might reasonably interpret to grant decedent a general power of appointment. The references to the marital deduction alone in items II and XIV are insufficient to create a general power of appointment in decedent's favor. See Estate of Pierpont v. Commissioner, 336 F.2d at 281.

D. Conclusion

In conclusion, we defer to the ruling of the court of special appeals that Mr. Posner's will gave decedent no testamentary power of appointment. Moreover, we believe that the Maryland Court of Appeals would conclude, as the court of special

appeals stated in dicta, that the language in Mr. Posner's will was also insufficient to give decedent an inter vivos power of appointment over the marital trust property. Consequently, we hold that decedent possessed no general power of appointment for purposes of section 2041(a)(2).

III. Duty of Consistency

On its estate tax return, Mr. Posner's estate claimed a marital deduction for the marital trust property.[10] In doing so, respondent contends, Mr. Posner's estate represented that decedent possessed a general power of appointment over the marital trust property.[11] Respondent argues that the duty of

---

[10] Sec. 2056(a) allows a marital deduction from a decedent's gross estate for the value of any interest in property passing to the decedent's surviving spouse. Sec. 2056(c), as in effect at the time of Mr. Posner's death, limited the aggregate amount of the marital deduction to 50 percent of the value of the adjusted gross estate.

[11] A marital deduction is generally not allowable for any "terminable interest", which is a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur". Sec. 2056(b)(1); Estate of Davis v. Commissioner, T.C. Memo. 2003-55. Sec. 2056(b)(5) modifies this general rule by allowing a marital deduction for property with respect to which the surviving spouse is given a life estate with a general power of appointment.

We point out that Mr. Posner died before the 1981 enactment of the qualified terminable interest property (QTIP) rules of sec. 2056(b)(7). See Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403(d), 95 Stat. 302 (effective generally for estates of decedents dying after Dec. 31, 1981). Pursuant to the QTIP rules, if certain conditions are met, property with respect to which the spouse has a qualifying life interest may qualify for

(continued...)

consistency precludes decedent's estate from now taking the contrary position, upon which its claim for refund is predicated, that decedent possessed no general power of appointment.[12]  As explained below, we disagree.

As developed in caselaw, the duty of consistency (sometimes called quasi-estoppel) prevents a taxpayer from benefiting in a later year from an error or omission in an earlier year that cannot be corrected because the time to assess tax for the earlier year has expired.  Estate of Letts v. Commissioner, 109 T.C. 290, 296 (1997), affd. without published opinion 212 F.3d 600 (11th Cir. 2000).  The duty of consistency may apply if:  (1) The taxpayer made a representation of fact or reported an item for tax purposes in one tax year; (2) the Commissioner acquiesced

---

[11](...continued)
the marital deduction even though the spouse is given no power over the property's ultimate disposition.  H. Rept. 97-201, at 159-160 (1981), 1981-2 C.B. 352, 377-378; see Estate of Cavenaugh v. Commissioner, 100 T.C. 407, 415 (1993), affd. in part, revd. in part on other grounds and remanded 51 F.3d 597 (5th Cir. 1995).  The Internal Revenue Code specifically requires that if the spouse still holds the QTIP at death, its value must be included in the spouse's gross estate.  Sec. 2044.  By contrast, the Internal Revenue Code contains no specific provision (apart from the general rule of sec. 2041(a)(2), which brings into the gross estate property with respect to which the decedent has a general power of appointment) requiring property transferred pursuant to sec. 2056(b)(5) to be included in the spouse's gross estate.

[12] Respondent raised the duty of consistency as an affirmative defense and consequently has the burden of showing that it applies.  See Rule 142(a); Hull v. Commissioner, 87 F.2d 260, 262 (4th Cir. 1937), revg. 33 B.T.A. 178 (1935).

in or relied on that fact for that year; and (3) the taxpayer desires to change the representation previously made in a later tax year after the earlier year has been closed by the statute of limitations.  Id. at 297; LeFever v. Commissioner, 103 T.C. 525, 543 (1994), affd. 100 F.3d 778 (10th Cir. 1996).

Spouses, as well as their estates, may have sufficient identity of interests so that one may be estopped under the duty of consistency by a prior representation of the other.  Estate of Letts v. Commissioner, supra at 298; Cluck v. Commissioner, 105 T.C. 324, 333-336 (1995).  Respondent contends that Mr. Posner's estate and decedent's estate have sufficient identity of interests that the duty of consistency is applicable.  For purposes of this discussion, we assume, without deciding, that there was privity of interest between Mr. Posner's estate and decedent's estate.

On brief, respondent acknowledges that the duty of consistency applies "if the inconsistency is a question of fact or a mixed question of fact and law.  It does not apply to mutual mistake on the part of a taxpayer and the Service concerning a pure question of law."  See LeFever v. Commissioner, 100 F.3d at 788; Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986); S. Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 560 (1980); Unvert v. Commissioner, 72 T.C. 807, 816 (1979), affd. 656 F.2d 483 (9th

Cir. 1981).[13]  With little elaboration, respondent contends on brief that the inconsistency in question here is a "mixed question of fact and law", so that the duty of consistency applies.  We disagree.

In Crosley Corp. v. United States, 229 F.2d 376, 380 (6th Cir. 1956), the Court of Appeals for the Sixth Circuit noted that the duty of consistency "is probably applicable in cases where the factual situation is such as to justify the taxpayer in taking either of two possible positions" but generally does not apply "when the error is one of law arising out of a definite

---

[13] In Bennet v. Helvering, 137 F.2d 537, 539 (2d Cir. 1943), Judge Learned Hand considered and rejected the application of a duty of consistency based purely on a legal inconsistency, which he referred to as "a kind of estoppel as to the law":

> That theory is, not that the taxpayer was here "estopped" as to any fact by his earlier return, but that if the earlier assessment were made upon one theory of law, the same theory must be consistently followed thereafter * * * .  With deference * * * [this theory] seems to us, not only to have all the vices of an estoppel as to the facts, but not to have even the excuse which that doctrine has:  i.e., that in making his return a taxpayer does represent that it contains his complete gross income; something which the Commissioner cannot know. * * *

See also Ross v. Commissioner, 169 F.2d 483, 493-494 (1st Cir. 1948).  For a contrary view that the "fact versus law" distinction should be eliminated from the duty of consistency doctrine, see Johnson, "The Taxpayer's Duty of Consistency," 46 Tax L. Rev. 537, 552-553 (1991).  Inasmuch as respondent has conceded that the duty of consistency does not apply to a "mutual mistake on the part of a taxpayer and the Service concerning a pure question of law," we need not delve deeper into these matters here.

factual situation".  In the instant case, the inconsistency arose because of a mutual mistake in deciding how Mr. Posner's will should be construed under Maryland law--a purely legal issue. See <u>McIntyre v. Byrne</u>, 141 A.2d 692, 695 (Md. 1958) ("The construction of a will is a matter of law for the court to determine").  Mr. Posner's estate did not misrepresent the property or type of property that Mr. Posner had devised to decedent.  Respondent has not alleged any facts to show that the estate has been inconsistent with respect to any factual positions or to suggest that the inconsistency in question arose from anything other than a purely legal error in the context of "a definite factual situation".  <u>Crosley Corp. v. United States</u>, <u>supra</u> at 380.[14]

Moreover, the duty of consistency "does not apply where all pertinent facts are known to both the Commissioner and the

---

[14] In <u>Estate of Letts v. Commissioner</u>, 109 T.C. 290, 302-303 (1997), affd. without published opinion 212 F.3d 600 (11th Cir. 2000), we concluded that the inconsistency at issue involved a mixed question of fact and law as to whether certain property that the decedent's husband devised to her in trust was "terminable interest" property; i.e., an interest passing to the decedent that would end on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur.  See sec. 2056(b).  In <u>Estate of Letts</u>, unlike the instant case, a copy of the predeceased spouse's will was not attached to the earlier estate tax return, nor did the Commissioner audit the earlier estate tax return.  Thus the Commissioner did not know or have reason to know the operative facts and circumstances underlying the position taken on that return.  For these reasons, <u>Estate of Letts</u> is distinguishable from the instant case.

taxpayer", especially if "the crucial facts are known to both parties and the erroneous deductions are due to a mutual mistake of law." S. Pac. Transp. Co. v. Commissioner, supra at 560; cf. Interlochen Co. v. Commissioner, 232 F.2d 873 (4th Cir. 1956), affg. 24 T.C. 1000 (1955); Hull v. Commissioner, 87 F.2d 260, 262 (4th Cir. 1937) (stating that "a party either knowing the facts, or in a position to know them, cannot claim the benefit of estoppel"), revg. 33 B.T.A. 178 (1935). In the instant case, respondent had reason to know all the relevant facts. When Mr. Posner's estate filed its estate tax return, it adequately disclosed the relevant facts and documents, attaching a copy of Mr. Posner's will.[15] Respondent audited the estate tax return of Mr. Posner's estate and allowed the marital deduction.[16]

---

[15] Respondent claims that when Mr. Posner's estate filed the estate tax return, it made a "factual representation" that decedent possessed a general power of appointment over the marital trust property. We are not convinced that this is a factual representation; rather, it is a legal conclusion. In attaching Mr. Posner's will to the estate tax return, Mr. Posner's estate disclosed all underlying facts necessary to reach this conclusion or an alternative conclusion. Cf. Estate of Ashman v. Commissioner, T.C. Memo. 1998-145 ("The Commissioner may rely on representations in a return signed under penalties of perjury absent sufficient facts that provide actual or constructive knowledge to the contrary." (Emphasis added.)), affd. 231 F.3d 541 (9th Cir. 2000).

[16] Cf. Estate of Letts v. Commissioner, supra at 300 ("The Commissioner acquiesces in or relies on a fact if a taxpayer files a return that contains an inadequately disclosed item of which the Commissioner was not otherwise aware, the Commissioner accepts that return, and the time to assess tax expires without an audit of that return." (Emphasis added.)).

Respondent has not alleged any facts to suggest that this audit was insufficient in any regard other than in the failure to apply the law correctly. Under these circumstances, respondent cannot be viewed as justifiably relying on the legal representation on the estate tax return of Mr. Posner's estate.

The executor of Mr. Posner's estate and the executor of decedent's estate, as well as respondent's agents upon audit of Mr. Posner's estate's estate tax return, all acted in accordance with the mutual mistake of law that Mr. Posner's will gave decedent a general power of appointment. Indeed, when he filed the estate tax return of decedent's estate, decedent's executor included the marital trust property in decedent's gross estate and paid the resulting estate tax. He steadfastly maintained in the State court litigation that decedent possessed a testamentary power of appointment over the marital trust property. Only after the court of special appeals rejected this position and the Maryland Court of Appeals declined to hear the appeal did he file the refund claim. Respondent has not carried his burden to show that the duty of consistency should apply in these circumstances.

Accordingly, we hold that the marital trust property is not includable in decedent's gross estate.

IV. Accrued Interest on the Overpayment

The estate requests that we award it interest on its overpayment of estate tax pursuant to sections 6611 and 6621.

This Court generally does not have jurisdiction to enter a decision for interest upon an overpayment.  Estate of Baumgardner v. Commissioner, 85 T.C. 445, 452-453 (1985); Harrison v. Commissioner, T.C. Memo. 1994-614; see sec. 6512(b)(1).  As an exception to this general rule, however, section 6512(b)(2) provides that if the Secretary fails "to refund the overpayment determined by the Tax Court, together with the interest thereon as provided in subchapter B of chapter 67, then the Tax Court upon motion by the taxpayer, shall have jurisdiction to order the refund of such overpayment and interest."

The estate makes no allegation that it paid the interest it claims or that this interest is part of its overpayment of estate tax.  Cf. Estate of Baumgardner v. Commissioner, supra.  On the contrary, the claimed interest appears to be interest that has accrued upon its overpayment.  Likewise, this case does not involve interest on an overpayment that the Commissioner has credited or refunded.  Cf. Sunoco, Inc. & Subs. v. Commissioner, 122 T.C. 88 (2004) (holding that under certain circumstances this Court has overpayment jurisdiction under section 6512(b) with regard to overpayment interest in the case of overpayments credited or refunded by the Commissioner).

We hold that we do not have jurisdiction at this juncture to enter a decision for interest upon the estate's overpayment of estate tax.

Because of concessions by the parties and the fact that the estate is claiming an overpayment,

<u>Decision will be</u>

<u>entered under Rule 155</u>.